GRACE H. WELLS, APPELLANT, V. FELIX TIETGE ET AL., APPELLEES.

9 N. W. (2d) 180

FILED APRIL 16, 1943. No. 31539.

*Joseph B. Fradenburg,* for appellant.

*Fischer, Fischer & Fischer* and *Guy E. Tate, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

MESSMORE, J.

Plaintiff brought this action on June 30, 1941, to quiet title to certain lands in Sarpy county. For the purpose of this appeal, three islands, designated as A, B and C, are all that is involved.

Felix Tietge, one of the defendants, died before trial, and, by stipulation, the action was revived in the name of his son-in-law, defendant Walter J. Larson, as administrator of the Felix Tietge estate.

Plaintiff's petition alleged, in substance, that she was the owner of and in possession of the real estate described therein and in which defendants claimed to have some interest, right to and a lien upon the land, and are committing acts of trespass which she described, praying that the title be quieted in her. Defendants' answer was a general denial and a renouncement of all claims to lands described in plaintiff's petition except the islands, as aforesaid. In a cross-petition defendants alleged adverse possession and the facts deemed necessary by them to establish such possession; that other parties claim a right to or interest in the islands; that defendants have paid taxes on the islands for a period of time; and prayed for a decree of adverse possession. Plaintiff denied generally the allegations of the cross-petition and offered to repay any and all taxes paid by defendants. The trial court dismissed the plaintiff's petition and found adversely to the defendants on their cross-petition. Motion for a new trial was filed and overruled, and the plaintiff appeals.

The record discloses, by stipulation, in substance, that if the plaintiff were present at the trial she would testify that she is and has been since 1913 the owner of tax lots A, B and C and accretions thereto, and since said time has been in open, continuous, peaceful and notorious possession thereof; that she has never lived upon said tax lots, but from 1920 until 1938 has been on the land on an average of once each month; that she has had no business dealings of any kind with the defendants, and that she, at no time prior to 1938, had any knowledge that defendants made any claim to any portion of the land.

On the question of defendants' adverse possession, defendant Tietge, the record discloses, had been acquainted with the islands in question for 35 or 40 years, and had hunted and fished thereon during such period. In 1924 he obtained permission from the tenant on plaintiff's farm to go across it to the islands for the purpose of erecting a tent, which remained until it was borrowed and taken away by the tenant. In 1926, defendant Tietge, Larson (his son-in-law) and his son built a shack or cabin on the south island. Gradually they improved it by putting in a cement floor and adding more durable material to the structure, clearing away the underbrush, transplanting trees, and furnishing the cabin with the proper equipment for week-ends during the hunting and fishing season and for picnicking. Defendants were on the island almost every week-end during the fishing and hunting season, and every three or four weeks during the winter time. The plaintiff's husband had known the defendants since 1924 or 1925, when they hunted and fished on the islands, and in 1932 he lived with Ray Anderson, a tenant on plaintiff's farm. He refused the defendants the right to cross plaintiff's farm to go to the islands, primarily for the reason that he had many friends and had no desire to show favoritism. Permission was likewise refused defendants by Anderson. Anderson retained his tenancy through 1934, and in 1933 and 1934 leased the islands for $25 to a neighbor for pasturing his sheep thereon.

In 1936, Tony Vencil, a tenant on plaintiff's farm, refused

the defendants the privilege of crossing the farm to go to the islands and referred them to one Thompson, an attorney, who was then representing the plaintiff. Vencil took immediate possession of the islands after moving on the farm, fenced them and pastured his cattle thereon. 'The record is in dispute, in some respects, as to the conversations had with the different tenants, in that the tenant Vencil, especially, had an arrangement, permitting the defendants to cross the plaintiff's farm; Vencil, in turn, being permitted to pasture cattle on the islands.

Defendant Tietge testified by deposition that Wells, plaintiff's husband, told him he had nothing to say about the islands. He stated he had told Wells that defendants felt the islands belonged to them because they had placed improvements on them. Vencil testified that defendants told him about two years previous to the trial that they claimed ownership of the islands, but prior to that time had told him that two parties (Shannon and Ryan) claimed ownership, and defendants were protecting plaintiff's interests as against such persons. Vencil permitted other persons to use the islands to hunt and fish, and, in fact, had cabins on the mainland for such purposes and collected revenue for their use and for the privilege of hunting and fishing.

The attorney Thompson testified that at the time of trial he had no interest, directly or indirectly, in the islands; that he had met defendant Tietge several times but did not remember meeting defendant Larson; that he had a conversation with Tietge regarding the islands on June 22, 1935, and made a memorandum of the conversation within a few minutes thereafter; that Tietge came into his office and said that he had been sent by a neighbor to the north of plaintiff's farm; that he had a shack on one of the islands just west of the farm which he had erected by permission of plaintiff's husband; that Ryan and Shannon made claim to the islands and attempted to put him off; that he, Tietge, claimed no interest as against the plaintiff, but he claimed an interest against Shannon and Ryan, and that the only purpose for which he used the islands was to hunt and fish.

On two or three occasions thereafter Thompson had conversations with Tietge which followed the same general lines, except the last one which was three years previous to the time of trial, Tietge stating in this last conversation that he and Larson claimed the islands as their own. Larson's name was never mentioned until in the last conversation. Tietge's version of this conversation was different, he stating that he showed to Thompson the tax receipts for 1938 to 1941, inclusive, which are in the record; that he did not say anything about claiming the title to the islands, but said he thought they belonged to the defendants. About 1930 Shannon and Ryan had the islands surveyed for the purpose of placing them on the tax records of Sarpy county, and to eventually claim them through tax title, or some other legal process. They paid the taxes for 1933. Subsequently, receiving the amount paid for the taxes from the plaintiff, they quitclaimed to the plaintiff.

"The plea of title to land by adverse possession, to be effective, must be proved by actual, open, exclusive and continuous possession under claim of ownership for the full statutory period of ten years." *Ellsworth Corporation v. Stratbucker,* 134 Neb. 246, 278 N. W. 381. See, also, *Conkey v. Knudsen,* 135 Neb. 890, 284 N. W. 737; *Frank v. Smith,* 138 Neb. 382, 293 N. W. 329, 134 A. L. R. 458.

The defendants admit the foregoing rule of law and concede, in addition, that a permissive entry will never ripen into title until notice of the claim is brought home to the owner, and that the tenant is estopped from denying the landlord's title.

Plaintiff's husband, the tenants Anderson and Vencil and the attorney Thompson denied that the defendants even so much as suggested to them any claim of title to the land. The original entry on the islands by the defendants was permissive. The witness Grabowski, who had been on the islands with defendants, testified that on many occasions, first in 1924, defendants had permission from the tenant on plaintiff's farm to go through the farm to the islands; that defendants never made any claim of ownership in the is-

lands to Grabowski. The witness Schneider corroborated this testimony with reference to obtaining permission from the tenant to cross plaintiff's farm, stating that defendants used the islands only for hunting, fishing and picnicking; that they lived elsewhere; that the islands were rented by the tenants on plaintiff's farm for pasturing sheep and then used by the tenant Vencil to pasture cattle. The islands, as before stated, were used by other persons for hunting and fishing.

The defendants cite *Lantry v. Parker,* 37 Neb. 353, 55 N.W. 962, in which the court said: "The law does not require that possession shall be evidenced by a complete enclosure, nor by persons remaining continuously upon the land, and constantly from day to day performing acts of ownership thereon. It is sufficient if the land is used continuously for the purposes to which it may be in its nature adapted;" the contention being that the islands were adapted only for the purpose for which they had been used by the defendants.

An analysis of the above case and similar cases from other jurisdictions, cited by defendants, discloses circumstances considerably different from those here existing. For instance, in the case cited, the land was adapted to grazing and hay-growing, and the one claiming ownership had, for ten years or more, cut the grass, harvested and disposed of the hay from such portions of the land as the character of it permitted, using it in conjunction with other lands, of like character, belonging to him. In addition, the claimant paid the taxes at intervals, warned trespassers and restrained cattle of others from grazing. This court held that such acts constituted actual, continuous, notorious and adverse possession for the statutory period.

In the case at bar the defendants paid taxes on the islands for 1938, 1939, 1940 and 1941. The general rule is: "Payment of taxes is not an element of adverse possession unless made so by express statutory requirement, and the fact that the owner of land held adversely by another continues to pay the taxes assessed on the land will not preclude the

latter from acquiring title thereto by lapse of time." 2 C. J. 203. There is no such statutory provision in this state. The payment of taxes is an element and circumstance which may be considered together with all of the other circumstances of the case with respect to the subject of adverse possession.

After a careful examination of the record, we conclude that the defendants have failed to prove by clear and convincing evidence their right of adverse possession.

The defendants contend that the plaintiff bases her title to the islands in that they are accretions to her farm, and that there is no record title or any other kind of title pleaded or proved by her. The substance of plaintiff's petition is heretofore set out, and we deem it sufficient.

Section 76-404, Comp. St. 1929, reads in part as follows: "It shall be sufficient to allege generally in the petition that the defendants claim or appear to have some interest in, rights or title to, or lien upon said real estate or a part thereof; and it shall not be necessary to allege the nature of any adverse claim." Plaintiff's allegations of ownership meet the requirements of the statute.

The cross-petition bases the defendants' claim of adverse ownership upon the title of plaintiff. The stipulation, heretofore set out in substance and undenied in the bill of exceptions, is evidence that the title to the islands or tax lots A, B and C is in the plaintiff by adverse possession. The defendants have failed to prove adverse ownership, as pleaded in their cross-petition.

In *LeBarron v. City of Harvard*, 129 Neb. 460, 262 N. W. 26, 100 A. L. R. 767, reversing *LeBarron v. City of Harvard*, 127 Neb. 899, 257 N. W. 261, the court said in the opinion (p. 470):

"Parties will not be relieved from stipulations in the absence of a clear showing that the matter stipulated is untrue, and then only if the application for such relief is seasonably made, and good cause is shown for granting it. 25 R. C. L. 1099, sec. 6; *Smith v. Smith*, 90 Fla. 824; *Muller v. Dows*, 94 U. S. 277; *United States v. Davison*, 1 Fed. (2d)

465; *Brown v. Cohn,* 88 Wis. 627; *Franklin v. National Ins. Co.,* 43 Mo. 491; *Holley v. Young,* 68 Me. 215; *Hutchings v. Buck,* 32 Me. 277."

The judgment of the trial court, dismissing the plaintiff's petition, is hereby reversed, and the court is directed to quiet title to tax lots A, B and C in the plaintiff, as prayed; in addition, plaintiff to refund to defendants taxes paid by them on such tax lots.

AFFIRMED IN PART AND REVERSED IN PART.