WILLUS D. DUNNICK ET AL., APPELLANTS, V. STOCKGROWERS BANK OF MARMOUTH, A CORPORATION, ET AL., APPELLEES.
215 N. W. 2d 93

Filed February 28, 1974. No. 39080.

Ryan & Scoville and Robert G. Scoville, for appellants.

Smith, Smith & Boyd, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and ZEILINGER, District Judge.

McCOWN, J.

This is an action to quiet title to accretion land along the Missouri River and in the City of Dakota City, Nebraska. The District Court quieted title in the plaintiffs to all the accretion land, except the extension of an alley and a road along the river bank. Title to the river road was quieted in the City of Dakota City. This appeal by plaintiffs involves only that road.

The accretion land here was originally platted as a part of the Village of Dakota City, and lies between block 273 and the Missouri River. Plaintiffs' immediate

predecessor in title acquired all of block 273 by deed dated May 11, 1952. Plaintiffs' interest in the land rests on possession since 1964 under a contract of purchase and a warranty deed to plaintiffs dated September 14, 1970. The deed conveyed all of block 273 and accretion thereto, but the warranty was limited to "that part of said real estate which is not accretion land." Plaintiffs commenced this quiet title action on November 5, 1970.

The accretion land here was east of the old high bank of the river. It was basically unenclosed and uncultivated land with timber, willows, and brush on most of it. The river road in question ran north and south along the river on the most easterly portion of the accretion land. The evidence was in some dispute as to the location of the road, the nature and extent of its use, and the period of time it had existed. There is evidence that before 1959 the road was used by hunters, fishermen, and sightseers. In 1959 some river stabilization work was done along the river bank. The road was used extensively by rock trucks during that time. There is ample evidence that from 1959 on, the road has been used continuously by the public and has been regularly maintained by the City of Dakota City. Aerial photographs in 1959 and on later dates confirm the existence of the road in the same location through the 10-year prescriptive period. The trial court found "that said City and the public have maintained and used said road continuously and adversely for more than ten years" and quieted and confirmed the fee simple title to the road in the City of Dakota City.

Plaintiffs contend that the evidence is insufficient to establish any title in the city by adverse possession or prescriptive use. To establish a road or highway by prescription there must be use by the general public under a claim of right, adverse to the owner of the land, of some particular or defined line of travel. The use must be uninterrupted and without substantial change for a

period of time necessary to bar an action to recover the land. Where the use of an easement has been adverse, notorious, and uninterrupted for the statutory period, it will be presumed to have been under a claim of right. The owner of the servient tenement is charged with knowledge of such use and acquiescence in it is implied. See State ex rel. Game, Forestation & Parks Commission v. Hull, 168 Neb. 805, 97 N. W. 2d 535. The evidence is more than sufficient to support the factual findings as to adverse possession and prescriptive use for the statutory period of 10 years.

Plaintiffs also contend that a governmental subdivision which has the power of eminent domain is barred as a matter of law from obtaining adverse possession of real property because the Constitution prohibits the taking of property without just compensation. Adverse possession or use of real property, whether by the State or by an individual, does not diminish nor destroy the owner's rights at any time during the running of the statutory period of limitation. The statute of limitations, however, requires the owner to exercise his rights within the 10-year time period. See Commonwealth of Kentucky v. Stephens, 407 S. W. 2d 711 (Ky., 1966). See, also, Annotation, 18 A. L. R. 3d 678. It is also significant that "the public" which used and acquired the right to this road is distinct from the city. The individual members of "the public," whose combined use created the right to this road, did not have the power of eminent domain. Where "the public" has acquired rights in land by adverse prescriptive use of the land as a road or highway, the appropriate corporate governmental unit, in this case the city, holds title for the benefit of the public.

Plaintiffs also assert that the city cannot obtain any title or rights by adverse possession or use of this real estate because it accepted payment of taxes on the land from plaintiffs. Cases cited in support of the proposition

are largely from states which have statutes requiring payment of taxes on property as a necessary element of proof of adverse possession. Payment of taxes is not a necessary element of adverse possession unless made so by express statutory requirement. There is no such statutory provision in this state. The payment of taxes is an element and circumstance which may be considered together with all the circumstances of the case with respect to the subject of adverse possession. Wells v. Tietge, 143 Neb. 230, 9 N. W. 2d 180. In view of the nature and description of the land, and the facts and circumstances here, the acceptance of taxes by the city did not create an estoppel nor bar its acquisition of title through adverse possession and use of the property by the public.

An issue remains as to the nature of title to the road which is to be held by the city. The decree of the District Court assigned a fee simple title to the city but did not specify any purpose for use. It is not necessary that a right to a road or highway obtained by prescription or use be equal in all respects to that which would have resulted from the formal establishment of a road by statutory proceedings. State ex rel. Game, Forestation & Parks Commission v. Hull, 168 Neb. 805, 97 N. W. 2d 535. Nevertheless, we think the Hull case clearly indicates that the nature of public rights in a highway acquired by prescriptive use should be equated with those flowing from an implied dedication of the land as a road or highway. We therefore hold that the City of Dakota City holds title to the road involved here for use as a public street, and the nature and extent of its title and ownership is the same as it would have been if the road described in the decree had been dedicated as a street and accepted by the city on the date of the decree. The decree is modified accordingly.

AFFIRMED AS MODIFIED.

NEWTON, J., concurring.

I concur in the result arrived at in the majority opinion but would clarify the nature of the interest acquired by the City of Dakota City.

It is the rule in this jurisdiction that "the title of a street vested in a municipality is not a fee simple title absolute but a qualified base or determinable fee and that the title which the municipality has is held in trust for the purposes for which the street is dedicated." Hillerege v. City of Scottsbluff, 164 Neb. 560, 83 N. W. 2d 76. See, also, Dell v. City of Lincoln, 170 Neb. 176, 102 N. W. 2d 62; Seefus v. Briley, 185 Neb. 202, 174 N. W. 2d 339. Insofar as cities of the second class are concerned, the rule remains unchanged by legislation and conforms to the general rule. It is stated in 39 Am. Jur. 2d, Highways, Streets, and Bridges, § 158, p. 531, that: "As a rule, and whether a highway is established by dedication or prescription, or by the direct action of the public authorities, the public acquires merely an easement of passage, the fee title remaining in the landowner. The general rule is that the law will not by construction effect a grant of a greater interest or estate than is essential for the public use."

In the present case we have a situation where the street has been acquired by prescription, not by dedication or formal opening under statutory proceedings. In other words, the public has acquired an easement. There has not been a conveyance of the fee. The fee has simply been subjected to the easement permitting the use of the land for purposes of travel by the public. " 'If an easement is acquired by prescription, the purpose for which the easement may be used is limited by the user under which the easement was acquired. The presumption of a grant is afforded only because possession amounting to a continuous claim of title has been acquiesced in for a period necessary to give a prescriptive right. Therefore, the presumed grant can

never extend further than the user in which the other party has acquiesced.' * * *

" 'The creation of a private way does not take away from the owner of the land over which it passes any portion of the fee of the soil. Regardless of how acquired, a private way carries with it by implication only such incidents as are necessary to its reasonable enjoyment.' " Drieth v. Dormer, 148 Neb. 422, 27 N. W. 2d 843. See, also, Elsasser v. Szymanski, 163 Neb. 65, 77 N. W. 2d 815.

WHITE, C. J., and BOSLAUGH, J., join in this concurrence.