BACHUS v WEST TRAVERSE TOWNSHIP

CUMMINGS v WEST TRAVERSE TOWNSHIP

Docket Nos. 50905, 50906. Submitted February 10, 1981, at Lansing.—
Decided May 12, 1981. Leave to appeal applied for.

Plaintiffs in two separate actions, Littleton J. Bachus and Eliza-
beth A. Bachus in one, and Truman H. Cummings, Jr., Alice J.
Cummings, Joyce C. Smith and Cheryl C. Von Valtier in the
other, were adjoining property owners of property which the
defendant, Township of West Traverse, claimed by adverse
possession. The actions were brought by the plaintiffs in Em-
met Circuit Court in order to quiet title. The actions were
consolidated and, following a single bench trial, the court found
that defendant had acquired title by adverse possession and
entered judgment accordingly, Nicholas J. Lambros, J. Plain-
tiffs appeal. *Held:*

Sufficient evidence was submitted to establish the township's
actual, visible, open, notorious and uninterrupted possession for
longer than the statutory period of 15 years; however, the
township's use of the property was neither exclusive nor hos-
tile. Furthermore, the defendant continually assessed taxes to
plaintiffs for the disputed property. Such action acts as em-
phatic recognition by the assessing governmental unit that the
taxed property is privately owned. The township's actions
create a strong presumption of plaintiffs' ownership over that
of the township. That presumption was not overcome by the
evidence and, therefore, the necessary element of hostile posses-
sion is absent. The trial court clearly erred in finding that
defendant had established title through adverse possession.

Reversed and remanded for entry of a judgment quieting title
in plaintiffs' favor.

ALLEN, J., dissented. He would hold that the trial court's

REFERENCES FOR POINTS IN HEADNOTES

[1, 9] 4 Am Jur 2d, Appeal and Error § 76.

[2] 3 Am Jur 2d, Adverse Possession §§ 32-34, 253.

[3] 3 Am Jur 2d, Adverse Possession §§ 50-53.

[4] 3 Am Jur 2d, Adverse Possession § 34.

[5] 3 Am Jur 2d, Adverse Possession § 124.

[6, 7] 3 Am Jur 2d, Adverse Possession § 32.

[8] 3 Am Jur 2d, Adverse Possession § 125.

finding of fact of adverse possession was not clearly erroneous because defendant had physical possession of the property and used it openly and notoriously. In such circumstances, hostility is presumed. He also disagrees that exclusive use by defendant was not proven. Finally, he urges that the inclusion of the property in question in the description for assessment purposes by the township did not create an estoppel nor bar its acquisition of title through adverse possession.

## Opinion of the Court

1. Appeal — Adverse Possession — Findings of Fact.

A trial court's findings of fact in an adverse possession case will not be overturned or modified unless they are clearly erroneous or unless the reviewing court is convinced it would have reached a different result had it occupied the position of the trial court.

2. Adverse Possession — Evidence.

Adverse possession must be established by clear and cogent proof of possession that is actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statutory period of 15 years, hostile and under cover of claim of right.

3. Adverse Possession — Concurrent Possession.

Possession that is concurrent with that of the true owner is never exclusive; therefore, it cannot support a claim of adverse possession.

4. Adverse Possession — Words and Phrases — Hostile Use.

Adverse or hostile use is use inconsistent with the right of the owner, without permission asked or given, use such as would entitle the owner to a cause of action against the intruder; the term "hostile" as employed in the law of adverse possession is a term of art which does not imply ill will, nor is the claimant required to make express declarations of adverse intent during the prescriptive period.

5. Adverse Possession — Taxation.

The assessment and collection of ad valorem taxes by an assessing governmental unit acts as recognition of private ownership of the taxed property and precludes a claim of adverse possession of the property by the taxing authority.

DISSENT BY ALLEN, J.

6. ADVERSE POSSESSION — HOSTILE USE — PRESUMPTION OF HOSTILITY.
*Possession that is visible, open, notorious and distinct is presumed to be hostile.*

7. ADVERSE POSSESSION — ACTUAL POSSESSION — PRESUMPTION OF HOSTILITY.
*The conditions of adverse possession are sufficiently complied with and notice is sufficiently given to other claimants or interested parties where possession is by actual occupation of the possessor or by his tenants under claim of title and the possession is visible, open, notorious and distinct; in such circumstances, the element of hostility is presumed to be present.*

8. ADVERSE POSSESSION — TAXATION.
*Payment of taxes is not a necessary element of adverse possession unless made so by express statutory requirement.*

9. APPEAL — ADVERSE POSSESSION — FINDINGS OF FACT.
*A trial court's finding of fact of adverse possession may not be overturned unless clearly erroneous.*

*Seberon Litzenburger,* for plaintiffs Bachus.

*Smith & Brooker, P.C.,* for plaintiffs Cummings, Smith and Von Valtier.

*Stephen B. Graham,* for defendant.

Before: CYNAR, P.J., and J. H. GILLIS and ALLEN, JJ.

PER CURIAM. In August, 1977, plaintiffs, adjoining property owners, filed separate actions to quiet title, under the provisions of MCL 600.2932; MSA 27A.2932, to a parcel of real property which defendant, West Traverse Township, claims by adverse possession. The two actions were consolidated in a single bench trial held in April, 1979. On September 24, 1979, the trial court filed a written opinion finding that defendant township had acquired title by adverse possession. From judgment entered

March 17, 1980, declaring defendant township owner of the parcel, plaintiffs appeal of right.

The parcel in question is a strip of land 66 feet (four rods) wide, and 66/100 of a mile long situated on the shore of Lake Michigan approximately five miles north of Harbor Springs. It lies between a scenic gravel road, known both as Lower Shore Drive and Thorne-Swift Memorial Highway on the east and Lake Michigan on the west. Through the center of the parcel runs the section line common to section 32 and section 5. Plaintiffs Bachus are the record titleholders of the southern 33 feet, and plaintiffs Cummings are the record titleholders of the northern 33 feet of said parcel. The township's claim of adverse title was based on the fact that from 1948 until suit was commenced in 1977, the township had used this strip as a township park and township residents had used the property as an access point to Lake Michigan.

The trial court's findings of fact in an adverse possession case will not be overturned or modified unless they are clearly erroneous or unless the reviewing court is convinced it would have reached a different result had it occupied the position of the trial court. *Rose v Fuller,* 21 Mich App 172; 175 NW2d 344 (1970), *De Hollander v Holwerda Greenhouses,* 45 Mich App 564; 207 NW2d 187 (1973), *Caywood v Dep't of Natural Resources,* 71 Mich App 322; 248 NW2d 253 (1976).

The necessary proofs for a successful adverse possession claim have been long established.

"Adverse possession must be established by clear and cogent proof of possession that is actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statutory period of 15 years, hostile and under cover of claim of right." *Burns v Foster,* 348 Mich 8, 14; 81 NW2d 386 (1957).

Sufficient evidence was submitted to establish defendant's actual, visible, open, notorious and uninterrupted possession. Some 15 long-time residents, many of whom were former township officers, testified that from 1948 until 1977 the township had placed picnic tables, cook stoves and refuse containers at the site each spring and had removed them in the fall; that cement foundations were provided for the cook stoves; that small signs had been erected in the 1950's declaring the parcel to be a township park and that the residents of the township referred to the site as a township park.

Nevertheless, it is apparent that the township's use of the Cummings property lacked the necessary element of exclusiveness. Truman Cummings, Jr., testified that he treated the property as his own private park. He cleaned up the area better than once a month and, when others attempted to camp on the land overnight, he would instruct them to leave. Possession that is concurrent with that of the true owner is never exclusive. *Hamilton v Weber,* 339 Mich 31, 53-54; 62 NW2d 646 (1954).

Furthermore, the township's claim to the property was not hostile to that of either of the title owners.

"The term 'hostile' as employed in the law of adverse possession is a term of art and does not imply ill will. Nor is the claimant required to make express declarations of adverse intent during the prescriptive period. Adverse or hostile use is use inconsistent with the right of the owner, without permission asked or given, use such as would entitle the owner to a cause of action against the intruder." *Mumrow v Riddle,* 67 Mich App 693, 698; 242 NW2d 489 (1976).

To the extent that plaintiff Truman Cummings,

Jr., intended his portion of the property to be used as a park, defendant's installation of picnic tables, stoves and refuse containers was not truly hostile to his interest. On the other hand, testimony that the township leveled parts of the land and installed park signs indicate the types of activities that, under the circumstances, would be more likely to lead to action by the true owners.

The deciding factor in our consideration of the element of hostility is that defendant had continually assessed taxes to plaintiffs for the disputed property. These assessments were based on land descriptions which included both the park area and plaintiffs' adjoining properties.

While the issue is a new one to this jurisdiction, we are convinced that the assessment and collection of ad valorem taxes acts as an emphatic recognition by the assessing governmental unit of private ownership. *Levering v City of Tarpon Springs,* 92 So 2d 638, 639 (Fla, 1957). Concededly, of the jurisdictions that have taken this view, some consider the payment of property taxes a prerequisite to an adverse possession claim. *Dunnick v Stockgrowers Bank of Marmouth,* 191 Neb 370, 373-374; 215 NW2d 93 (1974). Still, even those jurisdictions conclude that the assessment of taxes to the true owner acts as an acknowledgement of ownership; the relevant cases do not limit their reasoning to the fact that the assessing governmental units failed themselves to pay the property taxes. See, *e.g., Hamilton v Village of McCall,* 90 Idaho 253; 409 P2d 393 (1965), *Inhabitants of Town of Island Falls v AKR, Inc,* 157 Me 147; 170 A2d 395 (1961).

Defendant contends that while the property descriptions in the assessments included the park area, plaintiffs were not actually taxed for their

respective ownership of that land. Our review of
the record fails to demonstrate any real evidence
to support that claim. While certain testimony
indicated that, in other cases, assessment descrip-
tions had extended to the middle of abutting
streets without actually taxing for such ownership,
it was not established that such action had oc-
curred in this instance.

In any event, the property descriptions con-
tained in the tax assessments, and not the actual
amount of tax assessed, serves as recognition of
ownership in the person taxed. The property de-
scriptions were such as would have left plaintiffs
with the impression that their ownership was
conceded by the township.[1] The township's actions
create a strong presumption of plaintiffs' owner-
ship over that of the township. That presumption
was not overcome by the evidence below and,
therefore, the necessary element of hostile posses-
sion is absent.

We conclude that the lower court was clearly
erroneous in finding that defendant had estab-
lished title through adverse possession. The judg-
ment below is reversed and the case remanded for
entry of a judgment quieting title in plaintiffs'
favor.

Reversed and remanded.

ALLEN, J. *(dissenting).* Respectfully, I disagree
that the township's use of the property was nei-
ther hostile nor exclusive.

I know of no act exhibiting more hostility than

---

[1] We mean to make it clear that our decision is not limited to the
actual assessment of taxes based on the disputed property. To the
extent defendant assessed and collected such taxes its adverse posses-
sion claim might best be labeled sheer chutzpah. "Chutzpah" is where
a defendant, after being convicted of parricide, begs the mercy of the
sentencing court because he is an orphan.

bringing in a bulldozer, leveling the natural terrain of the land, and cutting trees. This was done in 1948. Nor can I conceive of conduct which would more clearly indicate ownership in the township than erecting signs declaring that the property was a township park. While plaintiffs Cummings contend that there were no signs until a large four-foot by five-foot sign was erected in 1974, other witnesses stated that smaller signs had been erected in the 1950's. The trial judge who saw the witnesses and was best able to determine credibility chose to believe that signs had been erected on the property long before 1974. The testimony of Truman H. Cummings, Jr., evidenced the township's hostile claim when he explained that he had recently platted his property but didn't attempt to include the 33 feet which he owned of the parcel in question "because we were afraid we wouldn't get the okay of the township if we did". The majority opinion acknowledges that physical possession was held by the township and that the township's use of the property was open and notorious. Under such circumstances, hostility is presumed according to Michigan law.

"In *Dubois v Karazin,* 315 Mich 598, the Court quoted with approval from *Greene v Anglemire,* 77 Mich 168, as follows:

" 'When the possession is by actual occupation of the possessor, or by his tenants, under claim of title, his possession is visible, open, notorious, distinct, and will be presumed to be hostile. In such case the conditions are all sufficiently complied with to make the possession adverse, and sufficiently notified to other claimants, or parties interested.' " *Walker v Bowen,* 333 Mich 13, 22; 52 NW2d 574 (1952).

Nor am I persuaded that, merely because Truman H. Cummings, Jr., testified that better than

once a month he picked up trash and informed third-party visitors that overnight camping was prohibited, the necessary element of exclusiveness was not established. I don't believe this single claim is sufficient to rebut the overwhelming testimony of some 15 long-time residents connoting exclusivity. Furthermore, Cummings admitted that when problems arose concerning noise, litter, fire and the cutting down of trees, the other property owners in the area would complain to the township. That testimony indicates that people in the area believed that the township, rather than the plaintiffs, was the owner of the property.

Finally, I cannot agree that, on the facts before us, the deciding factor on the element of hostility is that the property descriptions in tax bills included the small park area. The tax bill to the Cummingses described 433 feet of Lake Michigan frontage of which the park property was only 33 feet. The tax bill to plaintiffs Bachus described 14.12 acres of which the park property was only 33 feet. Therefore, we do not have the situation found in *Levering v City of Tarpon Springs,* 92 So 2d 638, 639 (Fla, 1957), and cited by the majority where the taxing unit claims adverse possession to all or a major portion of the property described in the tax bill.[1]

The situation in the instant case is more like that found in *Dunnick v Stockgrowers Bank of Marmouth,* 191 Neb 370; 215 NW2d 93 (1974), also

---

[1] In *Levering,* plaintiffs were owners of tract 146, a parcel 300 feet north and south and 922 feet east and west. In 1926, the city mistakenly built its waterworks plant on the north half of tract 146, and on the south half of tract 147 (owned by the city). The mistake wasn't discovered until 1955 but during the intervening period the city had sent tax bills to plaintiffs for the entire tract and plaintiffs had paid. The city sought to acquire title by adverse possession but the court held that collecting taxes showed the city's ownership was not hostile.

cited by the majority. There the trial court had quieted title in the City of Dakota City to that portion of accretion land used by the public as a road. There was ample evidence that from 1959 on the property had been used by the public as a road and had been maintained by the city. On appeal, plaintiff claimed that it had been paying taxes on a larger parcel of which the portion used as a roadway was a part and, hence, adverse possession could not be acquired by the city. The Supreme Court disagreed, saying:

"Plaintiffs also assert that the city cannot obtain any title or rights by adverse possession or use of this real estate because it accepted payment of taxes on the land from plaintiffs. Cases cited in support of the proposition are largely from states which have statutes requiring payment of taxes on property as a necessary element of proof of adverse possession. Payment of taxes is not a necessary element of adverse possession unless made so by express statutory requirement. There is no such statutory provision in this state. The payment of taxes is an element and circumstance which may be considered together with all the circumstances of the case with respect to the subject of adverse possession. *Wells v Tietge,* 143 Neb 230; 9 NW2d 180 [1943]. In view of the nature and description of the land, and the facts and circumstances here, the acceptance of taxes by the city did not create an estoppel nor bar its acquisition of title through adverse possession and use of the property by the public." *Id.,* 373-374.

Two witnesses, one a former township assessor and the other the current township assessor, testified that where a right-of-way or street marked the outer boundary of the property to be assessed, it was the township's practice to include the right-of-way or street in the property description but not include it as part of the property taxed. This

testimony was not rebutted by plaintiffs and the trial judge found:

"Annual tax statements by defendant to the plaintiffs contained the general descriptions of the real estate owned by the respective plaintiffs on either side of the section common to sections 32 and 5, including the 'parcel' in question. While this is true, it does not necessarily follow that the taxes so paid by the plaintiffs on the property described on the tax statements included taxes paid on the 'parcel' of land in dispute. On the contrary, in this case it would seem [that] the opposite were true. The 'parcel' represented a portion of land acquired by the defendant for the construction of a roadway known as Middle Road. Although the township may not have altered descriptions on tax statements to conform with its acquisition of land for construction of the roadway, taxpayers abutting the roadway could not believe that they were paying taxes on property legally acquired by defendant for highway purposes. Therefore, plaintiffs claim, standing alone, as it does, does not defeat defendant's claim of adverse possession."

Accordingly, I disagree with the majority that it was necessary to introduce further testimony that in this case the 33-foot parcels were not taxed. A trial court's finding of fact of adverse possession may not be overturned unless clearly erroneous. *De Hollander v Holwerda Greenhouses*, 45 Mich App 564, 566; 207 NW2d 187 (1973). Given the overwhelming testimony of open and notorious use of the property by the public—testimony controverted only by one witness, Truman Cummings, Jr., "chutzpah" or not, I am not persuaded the trial court clearly erred.