REQUESTED BY: Elroy M. Hefner State Senator Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senator Hefner:
You have asked several questions relative to abandonment of county roads pursuant to your consideration of the possibility of introducing legislation at the next session to clarify some issues related thereto. Your first question was: `Does a county have a right to sell a road that has been established by prescription and which has been vacated?'
The rule as to the nature of ownership of a prescriptive road is stated in Dunnick v. Stockgrowers Bankof Marmouth, 191 Neb. 370, 215 N.W.2d 93 (1974), and is:
`The title and ownership of land acquired by adverse possession and prescriptive use by the public as a road or street is the same as it would have been if the land had been dedicated as a street or highway and accepted by the appropriated governmental entity.' It is true that the extent or width of the road is a factual question to be determined on the basis of the extent and nature of the use made of the property during the prescriptive period. Smith v.Bixby, 196 Neb. 235, 242 N.W.2d 115 (1976). It was stated in Barrett v. Hand, 158 Neb. 273, 63 N.W.2d 185 (1954) that a public highway, while being used as such, can only be vacated by the county board in the manner prescribed by law. Of course, the statutory procedure has changed since that case was decided, but there can be no doubt that a county road can only be vacated by strictly following the statutes relating thereto.
Neb.Rev.Stat. §§ 39-1722, 1723, 1724 (Supp. 1980) provide for petitions, resolutions by the county board, and notice. Neb.Rev.Stat. § 39-1725 (Supp. 1980) provides that the county board may or may not order vacation after the preliminary requisites have been met, and that if it chooses to vacate or abandon, the resolution shall state upon what conditions, if any, the vacation or abandonment shall be qualified, including sale of title of right-of-way, reversion, or continuing public ownership. Only in the event the board fails to specify as above, and if there is ten years nonuse, can there be reverter to abutters, one-half to each side, unless the board specifies reversion.
Dell v. City of Lincoln, 170 Neb. 176, 102 N.W.2d 62
(1960), holds in effect, that municipalities are creatures of statute and have only such powers as are given them by the legislature. The same rule holds for counties. TheDell case goes on to say that disposition of land is covered by the vacation and abandonment statutes relative thereto, and that such acts will not be permitted to operate retrospectively, unless they were specifically made so by the legislature. This being true, it is necessary to advert to the statutes in effect at the time a public road became such, to determine how it is or may be disposed of, when the road ceases to be used as such. Dunnick v. StockgrowersBank of Marmouth, 191 Neb. 370, 215 N.W.2d 93 (1974), holds that a prescriptive right amounts to a fee title held by the municipality for the benefit of the public. It is true that in the concurring opinion, it is stated, that by way of obiter dictum that such fee title is only a fee simple determinable, which ends at the time the road is no longer used as a road. Despite this dictum, however, we believe that the method by which such a road is disposed of at the end of its use, is determined by the wording of the vacation or abandonment statute in effect at the time the road was acquired. See Hiddleston v. Nebraska Jewish FederationSoc., 186 Neb. 786, 186 N.W.2d 904 (1971).
Your second questions is whether the Thurston County officials had authority to sell land that the county road had occupied in a specific reference which you made. It would appear that the answer to this question would be found in the vacation and abandonment statutes relating to counties, in existence at the time the prescriptive right ripened on behalf of the public.
Your third question asks whether previous landowners can recover legal costs to defend themselves. If it should be determined that the land should have reverted to abutting owners, and if further it were found that failure to allow such reversion constituted a taking or damaging of property for public purposes under the constitution, then, conceivably under some circumstances, attorneys fees authorized in condemnation cases might be appropriate. In the case stated, however, it is difficult to find a public use, and we feel that a court would probably hold that the proper remedy would be found in equity, and not at law, in which case there would be no basis for the recovery of legal costs.
Your last question inquires whether problems would be encountered if the legislature provided that a county could only sell land with issuance of a warranty deed, rather than a quit claim deed, and if it required such sale to be by public auction rather than sealed bidding. As to the part relative to the type of deed, we can see no legal problems, but do believe there may be a practical problem. When large or expensive pieces of property are conveyed, it is almost always by warranty deed, since most buyers will not expend large sums of money unless they receive the warranty in return. But most sales of public land are of small bits and pieces. In many of such cases, the sale is made merely to get property back on the tax rolls, and then only because it has been found that there is a ready buyer. If the county were required to obtain an abstract for such property, the expense would probably exceed the amount to be realized, and therefore, one might expect that not many such sales would be made. The second part of the question, concerning public auction or sealed bidding again, is within the power of the legislature. As you are probably aware, there are advantages and disadvantages to both types of sale, and we know of no criteria which would assist in balancing the equities.
Very truly yours, PAUL L. DOUGLAS Attorney General Warren D. Lichty, Jr. Assistant Attorney General