BACHUS v WEST TRAVERSE TOWNSHIP (ON REMAND)

CUMMINGS v WEST TRAVERSE TOWNSHIP (ON REMAND)

Docket Nos. 64905, 64906. Submitted July 20, 1982, at Grand Rapids.
—Decided January 19, 1983.

Plaintiffs in two separate actions, Littleton J. Bachus and Eliza-
beth A. Bachus in one, and Truman H. Cummings, Jr., Alice J.
Cummings, Joyce C. Smith and Cheryl C. VonValtier in the
other, were adjoining property owners of property which the
defendant, Township of West Traverse, claimed by adverse
possession. The actions were brought to quiet title. The actions
were consolidated and, following a bench trial, the Emmet
Circuit Court, Nicholas J. Lambros, J., found that the township
had acquired title by adverse possession. Plaintiffs appealed,
and the Court of Appeals reversed. 107 Mich App 743 (1981).
Upon application for leave to appeal to the Supreme Court,
that Court remanded to the trial court for an evidentiary
hearing to determine whether the plaintiffs were assessed for
and paid taxes upon the land in question. 412 Mich 870 (1981).
The trial court held the hearing and reaffirmed its ruling in
favor of the township. Upon receiving the hearing record, the
Supreme Court remanded the case to the Court of Appeals for
reconsideration in light of the trial court's findings. 413 Mich
914 (1982). On remand, *held:*

The trial court clearly erred in finding that the plaintiffs had
not been assessed and had not paid taxes on the land in
question, which comprised a small portion of the lands held by
the plaintiffs. Prior to trial the township had indicated in its
answers to interrogatories that it had assessed and collected
taxes on the land. Testimony at the evidentiary hearing by the
former township assessor regarding the method he used in
assessing the plaintiffs' lands was not sufficient to overcome the
evidence created by the answers to the interrogatories, that the
portions of those lands here in question were taxed. Further-
more, the plaintiffs were never informed that the property in

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 820, 826.
[2] 23 Am Jur 2d, Depositions and Discovery § 292.

question had been excluded from the total assessed values of their lands.

Reversed.

ALLEN, J., dissented. He would hold that the majority placed too much emphasis on the answers to the interrogatories. Those answers should be weighed along with the other evidence. Judge ALLEN would hold that the trial court did not clearly err when weighing the evidence, including the testimony of the former assessor, and that the testimony supports the findings of the trial court. He would affirm, and reverse the former holding of the Court of Appeals.

OPINION OF THE COURT

1. APPEAL — FINDINGS OF FACT — CLEAR ERROR.

A trial court's finding of fact may be found to be clearly erroneous where the reviewing court, upon examination of the entire record, is left with a definite and firm conviction that a mistake has been committed.

DISSENT BY ALLEN, J.

2. TRIAL — INTERROGATORIES — ANSWERS TO INTERROGATORIES — COURT RULES.

Answers to interrogatories may be used at trial for the purpose of impeaching the testimony of a party witness who answered the interrogatories and as substantive evidence where the person answering was an employee or agent of any party at the time of the transaction or occurrence out of which the action arose (GCR 1963, 302.4, 309.4).

*Seberon Litzenburger,* for plaintiffs Bachus.

*Smith & Brooker, P.C.,* for plaintiffs Cummings, Smith and VonValtier.

*Stephen B. Graham,* for defendant.

ON REMAND

Before: CYNAR, P.J., and J. H. GILLIS and ALLEN, JJ.

J. H. GILLIS, J. Chutzpah—a delightful Yiddish

expression loosely defined as gall. In this panel's prior opinion in this cause, our beloved colleague, Judge NATHAN J. KAUFMAN, gave us a classic example of chutzpah, to wit: a defendant who, about to be sentenced for murdering his parents, begs the mercy of the sentencing court because he is an orphan.[1]

This case presents another splendid example of chutzpah. The defendant, West Traverse Township, claims title to the land in question by adverse possession, even though it continued to assess and collect taxes on the property.

The relevant facts are accurately set forth in the dissenting opinion. Our review of the record convinces us that the trial court clearly erred in finding that plaintiffs were not assessed and did not pay taxes on the subject property.

It is undisputed that the land descriptions contained in the property tax bills sent to and paid by plaintiffs included the property which defendant now claims by adverse possession. Before this suit was tried, interrogatories were sent by plaintiffs to defendant. Plaintiffs Bachus' interrogatories numbers 7 and 8 asked:

"Does West Traverse Township admit that the plaintiffs and their predecessors in title have been assessed for taxes on land described in paragraph 1 of plaintiff's complaint[2] for more than forty (40) years?

"Does West Traverse Township admit that the taxes

---

[1] *Bachus v West Traverse Twp,* 107 Mich App 743, 749, fn 1; 310 NW2d 1 (1981), *remanded* 412 Mich 870 (1981).

[2] Paragraph 1 of plaintiffs Bachus' complaint described the southern half of the subject parcel, of which the Bachuses are record titleholders.

assessed on the land described in paragraph 1 of plaintiff's complaint have been paid?"

Defendant's answers to each of these interrogatories was "yes".[3]

These interrogatories address the precise question now before this Court. How, then, can defendant maintain that the taxes were not assessed and paid?

The dissenting opinion places great emphasis on the fact that these interrogatories were in the file at the time the Supreme Court remanded the case to the trial court for an evidentiary hearing. The dissenting opinion concludes that since the Supreme Court did not rule in favor of plaintiffs on the initial appeal, this Court cannot now reverse unless it makes "the dubious assumption that the Supreme Court did not know of the interrogatories and defendant's response thereto". We fail to see the logic of that conclusion. In our opinion the Supreme Court, in remanding the matter to this Court for reconsideration in light of the trial court's findings, intended this Court to give continued credence to the existing record, including the above-quoted interrogatories. Defendant's answers to those interrogatories created some evidence that plaintiffs were assessed and paid taxes on the disputed parcel. The Supreme Court's remand to the trial court for an evidentiary hearing merely afforded defendant the opportunity to rebut that evidence. In our view, defendant clearly failed to do so.

Defendant contends that, while the property descriptions in the assessments included the disputed "park" area, plaintiffs were not actually

---

[3] Similar interrogatories were submitted by plaintiffs Cummings, to which the township responded in the affirmative.

taxed on that land. This position is based on the hearing testimony of the township's former tax assessor, who was in office from 1942 through 1968. The assessor testified that during his term in office there were no guidelines for appraising property, and that he made the assessments on a lump sum rather than per acre basis. He stated that although the descriptions in the tax bills included the disputed "park" area, *in his own mind,* he excluded that subject property from the assessed valuation because he knew it was being used as a township park. However, the assessor was unable to state the amount which he subtracted for the "park" area. Moreover, except for a general assertion regarding his treatment of highway property, he was unable to recall any other instance in which township property was included in the tax description of a private landowner but mentally excluded during the assessment process.

The salient fact, which is undisputed, is that plaintiffs were never advised that the "park" area had been excluded from the total assessed values of their properties. Throughout the statutory period, plaintiffs believed, and justifiably relied on the belief, that they were paying taxes on the subject parcel. It was the township's duty to notify plaintiffs that the "park" area was being excluded from the assessed values of their land. Had plaintiffs known that the assessed taxes pertained only to a portion of the land described in their tax bills, they may well have chosen to appeal those assessments. Moreover, had plaintiffs been timely informed that the property was being excluded from their total tax assessments, they could easily have taken some other action to exercise their ownership rights in the property and thereby defeated defendant's claim of adverse possession.

In reviewing both the evidentiary hearing transcript and the pre-existing record, we are left with a definite and firm conviction that a mistake has been committed. In our view, the assessor's testimony that he subtracted *in pectore*[4] the value of the "park" area from the total assessed valuations of plaintiffs' properties is insufficient to overcome the contrary evidence created by defendant's answers to the interrogatories.

We hold that the trial court clearly erred in finding that plaintiffs were not assessed and did not pay taxes on the property in question. Accordingly, we reaffirm this panel's earlier holding that defendant failed to establish the element of hostile use necessary to create title by adverse possession.

The finding of the trial court is reversed.

CYNAR, P.J., concurred.

ALLEN, J. *(dissenting)*. Once again I must respectfully dissent. In *Bachus v West Traverse Twp*, 107 Mich App 743; 310 NW2d 1 (1981), this panel, with this writer dissenting, reversed a finding of the trial court that defendant township had acquired title by adverse possession to a parcel of property owned by plaintiffs.

The parcel in question is a strip of land 66 feet wide and 66/100 of a mile long, situated on the shore of Lake Michigan, some five miles north of Harbor Springs. The majority found that since, during the period of claimed adverse possession, the township continued to send plaintiffs tax bills, which included within their description of the

---

[4] In the Roman Catholic Church the pontiff announces the appointment of a designated number of Cardinals and may sometimes not disclose all of them by name. If the Cardinal who was appointed is from an iron curtain country, the appointment is made *in pectore,* which means "in the breast". The name is not disclosed for fear that some harm might come to the recipient of this honor.

property taxed the parcel in dispute, and since plaintiffs continued to pay such taxes, the necessary element of hostile possession had not been established.

Following our decision, the Supreme Court remanded the matter to the trial court for an evidentiary hearing to determine "whether the plaintiffs were assessed and paid taxes on the parts of their land that the defendant claims by adverse possession". *Bachus v West Traverse Twp,* 412 Mich 870 (1981). The evidentiary hearing was held on January 14, 1982, following which the trial court reaffirmed its earlier ruling in favor of the township. The court found that "the plaintiffs were not assessed and did not pay taxes on that part of the land in question here, even though it was included in the tax descriptions that were sent to the plaintiffs".

The hearing record was filed with the Supreme Court which, by order dated June 3, 1982, remanded to this Court for reconsideration in light of the trial court's findings. 413 Mich 914 (1982). My review of the record convinces me that the trial court did not err in finding that plaintiffs in fact were not assessed and did not pay taxes on the subject property.

It is undisputed that the land descriptions contained in the property tax bills sent to and paid by plaintiffs described other lands owned by plaintiffs but also included the parcel defendant claims by adverse possession. Before this suit was initially tried, interrogatories were sent by plaintiffs to defendant. Plaintiffs Bachus' interrogatories numbers 7 and 8 asked:

"Does West Traverse Township admit that the plaintiffs and their predecessors in title have been assessed

for taxes on land described in paragraph 1 of plaintiff's complaint for more than forty (40) years?"

"Does West Traverse Township admit that the taxes assessed on the land described in paragraph 1 of plaintiff's complaint have been paid?"

Defendant's answers to each of these interrogatories was "yes".

The thrust of the majority opinion again is that defendant's answer to the interrogatories is so totally inconsistent and contradictory to the testimony given at the hearing upon remand that the trial court's findings must be reversed. The majority place too much emphasis on the interrogatories. The interrogatories were answered April 12, 1978, prior to the first trial. The interrogatories and answer were part of the file when *Bachus v West Traverse Twp, supra,* was written and were part of the file which went to the Supreme Court, which upon review, remanded to the trial court. I find it difficult for this Court to now reverse on grounds that were in the file when the case was reviewed by the Supreme Court but were not relied upon by the Supreme Court as reasons for reversal.

Only if one makes the dubious assumption that the Supreme Court did not know of the interrogatories and defendant's response thereto can one justify now doing what, upon the same facts, the Supreme Court did not do. I decline to make that assumption.

My reasons for affirming the trial court are also based on the solid legal grounds that the testimony upon remand clearly supports the findings of the trial judge. At the beginning of the evidentiary hearing on remand from the Supreme Court, plaintiffs argued, as they do here on appeal, that the trial court should find that the taxes on the

disputed property were paid by the plaintiffs because of the answers to the interrogatories and that a hearing was unnecessary. The trial judge ruled that an evidentiary hearing would be held, stating that while the annual tax statements did contain a description of each plaintiff's property which included the land in dispute and taxes were paid on that description, it had not been established that the assessment in fact included the disputed land.

The main witness was Hugh Heynig who had been West Traverse Township Supervisor (and the township's only assessor) from 1942 until 1968, which included the period during which defendant is claiming that the prescriptive period ran. Heynig described a very informal procedure for assessing property. Basically, he would go out and look at the land and arrive at a "lump sum" figure (instead of multiplying acreage by a dollar amount as done now) in his head. While the descriptions of the property would include public rights-of-way (including public roads), Heynig stated that he would mentally subtract an amount for the roads and, specifically, he remembers subtracting an amount for the disputed "township park".

The township had no assessment card system and the deductions were not recorded and Heynig was unable to say what amount he mentally deducted from plaintiffs' assessments to allow for the park. Heynig explained that during these years property assessments were very low and no one was that concerned about precision. A 1955 state assessment manual used by Heynig was admitted into evidence. The manual stated that there is no uniform method for excepting public rights-of-way from assessments in Michigan, that the recommended practice is to include the acreage excepted

as a part of the property description and then deduct acreage for the right-of-way from total acreage.

Stanley McRae, the assessor for West Traverse Township since 1979, after the present suit was filed, described the assessment cards which were prepared for the plaintiffs' property in 1973 when the township began using an assessment card system. The description included the disputed township park, the acreage was multiplied by a dollar assessment, and there was no indication of a deduction or exception for the Thorn Memorial Highway which crossed plaintiffs' property. The cards were prepared by the firm of Cole-Layer-Trumble, which was hired by Emmet County to do a countywide reappraisal in 1973, and were not prepared by West Traverse Township officials. McRae also admitted that a lot of inaccuracies were contained in the descriptions furnished to the firm by the Township. Finally, I note that the answer to the interrogatories, upon which the majority so strongly rely, was made by Richard Babcock, the current township supervisor, and not by Heynig, the township supervisor during the period of claimed adverse possession.

At the conclusion of the hearing, the trial judge found plaintiffs had not in fact paid taxes on the disputed property.

"But the fact is that Mr. Heynig has testified that as an assessor for the years 1942 through 1968—that is 26 years—he included the land in the tax description that was submitted to the plaintiffs for the payment of their taxes, but they were not assessed and they did not pay taxes on the 33 feet in either section belonging to the plaintiffs, Bachus and Cummings. So he excluded from Bachus in his own mind the southern 33 feet, and from plaintiff Cummings the northern 33 feet of that parcel. And he did so in his own mind feeling that it was a

right-of-way. He knew it was being used as a park. He also thought it happened to be a portion of a roadway that really wasn't a roadway, as we all know, but in his own mind he thought it was a right-of-way and he knew it was being used as a township park. And in making the assessment he excluded that section from the assessed valuation for tax purposes, even though that parcel was included in the tax description that was sent to the plaintiffs.

"I admit that that was a very imprecise formula. But he did it for 26 years, and he did it, I assume, for all parcels in question that he was dealing with. That is the way he prepared and made his valuations, made his assessments. And imprecise as I may feel it is, and imprecise as everybody else may think it is, that was the way it was done. He has testified to that, and he seems like a very honest forthright individual. And he said he had no guidelines to follow and he did the best he could under the circumstances. And there were no comparable sales he could go on, because he said land didn't change hands much. He has testified to that fact.

"Now Mr. McRae, who was assessing in 1979, '80 and '81, has said absolutely nothing as to how the parcel was assessed during that period of time."

Plaintiffs' counsel then inquired how the court would respond to the fact that the township had admitted in their answer to certain interrogatories that plaintiffs in fact had been assessed and had paid taxes on the lands in question. The court replied:

"Well, I could, yes. The court even said in its opinion that it was undisputed that the plaintiffs had been assessed and had paid taxes on the land, which tax description included the aforementioned parcels. And I am not certain how those interrogatories were, in what posture they were answered, or what they felt they were. But the court went on in its opinion to state that the annual tax statements by defendant to plaintiffs contained the general descriptions of the real estate

owned by the respective plaintiffs on either side of the section common to §§ 32 and 5, including the parcel in question. And while this is true, it does not necessarily follow that the taxes so paid by the plaintiffs on the property described on the tax statements included taxes paid on the parcel of land in dispute.

"So there could have been a misunderstanding there in terms of the word 'assessed', and whether at that time the question was asked whether or not they were assessed for the entire parcel or only assessed for part. But I think the testimony here today clarified that if there was any problem with it. We are all here today, and it was clarified that that parcel was not included in assessment and taxes were not paid on it."

The above summation of the testimony and the findings of the trial court are set forth by this writer in greater length than usual for the purpose of disclosing that the trial court did not come to its conclusions lightly or without record support. Certainly plaintiffs, their counsel and the majority cannot be faulted for relying so heavily upon the township's response to interrogatories prior to the first trial. The natural implication of such response is that, at trial or upon remand, the township had changed its position for self-serving purposes, or upon remand gave false testimony. However, the trial court found the witness forthright and honest. Findings of fact by a trial court will not be set aside upon appellate review unless "clearly erroneous". GCR 1963, 517.1. *Williams v American Title Ins Co,* 83 Mich App 686; 269 NW2d 481 (1978). A finding is not clearly erroneous unless the reviewing court is left with a firm and definite conclusion that a mistake has been made. *Tuttle v Dep't of State Highways,* 397 Mich 44; 243 NW2d 244 (1976). Having reviewed the testimony and the findings of the trial judge upon remand, I am not persuaded that a mistake has

been made. To the contrary, the testimony makes it clear that, although the annual tax statements contained a description of each plaintiff's property which included the park parcel in question, assessement was not in fact made on the park parcel itself.

The majority opinion gives too little weight to the findings of the trial judge and far too much weight to the response given to interrogatories prior to the first trial. Admissions in interrogatories are not to be weighed so heavily. Under Rule 309.4, answers to interrogatories may be used to the same extent as provided in subrule 302.4 for the use of a deposition of a party. Rule 302.4 states that a deposition may be used at trial for the purpose of impeaching the testimony of the deponent as a witness. The deposition may be used as substantive evidence where the deponent was an employee or agent of any party at the time of the transaction or occurrence out of which the action arose or the deposition was taken. See *Mendyk v MESC,* 94 Mich App 425, 435-436; 288 NW2d 643 (1979). Thus, the trial court would weigh the answers to the interrogatories, if admitted, along with the other evidence. This is precisely what the trial judge did. He weighed the answer in the interrogatories with all of the testimony taken at the hearing on remand. Having done so he concluded that the testimony upon remand outweighed the earlier contrary response to the interrogatories.[1]

---

[1] A statement of fact in response to an interrogatory should be distinguished from a statement of fact in pleadings. Under GCR 1963, 604, a statement of fact in a pleading is treated as an admission by the pleader and need not be proved by the opposite party. However, interrogatories are not pleadings and therefore the answers thereto are not binding but shall be considered along with all the other testimony and evidence adduced. In its answer to plaintiffs Cummings' complaint, defendant township denied that the Cummingses or their predecessor in title had paid taxes on the property.

Quantitatively and qualitatively the testimony upon remand supports the conclusions of the trial court. Under no circumstances should the defendant's isolated answer to the interrogatories before trial constitute grounds for reversal.

The findings of the trial court upon remand should be affirmed and our decision in *Bachus v West Traverse Twp, supra,* should be reversed.