HANSON *v.* WAY ESTATE

1. PROPERTY—RIPARIAN LAND—DEFINITION.
   Riparian land means a parcel of land which includes part of, or borders upon, a natural watercourse.

2. PROPERTY—RIPARIAN LAND—RIPARIAN PROPRIETOR.
   Possession of riparian land makes the possessor a riparian proprietor, regardless of the nature of his estate in the land.

3. PROPERTY—RIPARIAN RIGHTS—BOUNDARY LINES.
   A riparian landowner's rights in the waters adjacent to his land are to be determined by running the lines from the shore perpendicular to the course of the stream; rights in the water are not in any way dependent upon the direction of the boundary lines on the land.

4. PROPERTY—RIPARIAN LAND—SUBMERGED LAND—ALLUVIAL INCREMENTS—OWNERSHIP.
   Shorelines and the central line or thread of the stream are the only elements to be considered in measuring the extent of ownership of submerged land or of alluvial increments appurtenant to riparian land.

5. PROPERTY—ISLANDS—OWNERSHIP.
   The title to an island is generally vested in the owner of the bed of the waters out of which the island arises; therefore, as a general rule, the owner of a bed of water owns any island which arises on his side of the thread of the stream or channel and within his sidelines.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 56 Am Jur, Waters § 477.
[2] 56 Am Jur, Waters §§ 241, 273 *et seq.*
[3] 56 Am Jur, Waters § 275.
[4] 56 Am Jur, Waters § 451 *et seq.*
[5, 9] 56 Am Jur, Waters § 505.
[6, 8] 56 Am Jur, Waters § 453 *et seq.*
[7] 56 Am Jur, Waters § 323 *et seq.*

6. PROPERTY—RIPARIAN RIGHTS—POSSESSION.

The possession of land sufficient to have riparian rights requires merely an occupancy of the land with intent to control it; a former occupancy and cessation of occupancy, without abandonment, if no other has obtained possession; or the right against all other persons to immediate occupancy of the land, if no other person is in possession.

7. ADVERSE POSSESSION—TITLE—VALIDITY.

A title by adverse possession is as good as the title which could have been acquired from a former owner of perfect title, or as one acquired by a grant from the state, or as one acquired by descent or devise.

8. PROPERTY—RIPARIAN RIGHTS—TITLE.

The rights of a riparian owner in adjacent waters are the same whether his title to the land was acquired by deed or by adverse possession.

9. PROPERTY—ISLANDS—OWNERSHIP—ADVERSE POSSESSION.

The owners of shoreline property owned an island located on their side of the thread of a river and within the exterior boundaries of their land abutting the river, as determined by extending the boundary lines perpendicular to the thread of the river, even though title to the shoreline property was acquired partly by deed and partly by adverse possession.

Appeal from Ottawa, Chester A. Ray, J. Submitted Division 3 April 9, 1970, at Grand Rapids. (Docket No. 7,849.) Decided July 29, 1970.

Complaint by David E. Hanson and Ray O. Petersen against the Estate of Bert Way, Paul C. Zoerner, Betty M. Zoerner, John Zurkewich, Rose Zurkewich and Board of County Road Commissioners of Ottawa County to quiet title. Defendant Bert Way Estate withdrew by stipulation. Judgment by default for plaintiffs against Paul C. Zoerner, Betty Zoerner, John Zurkewich, and Rose Zurkewich. Judgment for defendant Board of County Road Commissioners of Ottawa County. Plaintiffs appeal. Reversed.

*Vander Veen, Friehofer & Cook,* for plaintiffs.

Before: HOLBROOK, P. J., and BRONSON and E. W. BROWN,* JJ.

HOLBROOK, P. J.   The only question involved in this case is whether the rights of a riparian owner, where such rights were obtained through adverse possession, include ownership of an island which lies between the mainland property of the riparian owner and the thread of the river, and between the side lot lines of the owner's property as extended perpendicular to the thread of the river.

Plaintiffs, in August, 1966, commenced this action to quiet title to land in Crockery Township in the Ottawa County Circuit Court.  As originally filed, this action involved three parcels, *viz:* parcel A (not important to a decision in this case); parcel B (with more than 600 feet of frontage on Grand River); and parcel C (the island, the subject of this appeal) all properly shown on the map marked exhibit 1 which is made a part of this opinion.

Plaintiffs obtained, through purchase from Helen Lorenz Westphal, four warranty deeds to parcels B and D which property extends beyond the outside limits of and opposite parcel C on the north shore of Grand River.  Persons owning outstanding interests in the record title as to parcels B and A prompted this action.  Title as to parcel A was settled by stipulation.  Defendants owning outstanding interests of record as to parcel B failed to appear and their default was taken.  The circuit court after hearing proofs found that plaintiffs and their grantor had presented sufficient proofs to establish title in fee as to parcel B by adverse possession.  The court further ruled that plaintiffs and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

their grantor had not established ownership by adverse possession as to parcel C (the island) and denied relief thereto. Parcel C is located in the Grand River in Crockery Township where the main river course appears to lie in a northwesterly-southeasterly direction.

Plaintiffs have appealed from the determination of the court insofar as it relates to parcel C claiming that because plaintiffs own the fee title to parcel B and own parcel D in fee by mesne conveyance, they are the owners of the island under the law of riparian rights because the island lies between their land on the north shore of the river and the thread of the river. The trial court determined as a matter of fact that the island was located between plaintiffs' property and the thread of the river.

Insofar as this appeal is concerned, the defendant, Ottawa County Road Commission, was the only active adverse party in the circuit court. No brief has been submitted by it in this Court. The Ottawa County Road Commission's position at trial was to the effect that it owned the land to the south of the island and therefore, it owned the island.

It appears from the record that the island in question is, as the trial court found, located entirely on plaintiffs' side of the thread of the river.

"Riparian land" is defined as a parcel of land which includes therein a part of, or borders upon, a natural watercourse, such as a river. 4 Restatement, Torts, § 843, p 326. A "riparian proprietor" is a person who is in possession of such riparian land or who owns an estate therein. *Thompson* v. *Enz* (1967), 379 Mich 667, 677. Possession of riparian land is deemed to make the possessor a riparian proprietor, *regardless of the nature of his estate therein,* and such possession is the fact upon which the law predicates rights and privileges in the water

EXHIBIT 1

to which the land is riparian. The possessor's interests are afforded legal protection due to the fact that his possession gives him lawful access to the water for his own private purposes. 4 Restatement, Torts, § 844, pp 331, 332.

The method for determining the extent of a riparian proprietor's ownership rights in the waters adjacent to his land was set forth by the Supreme Court in *Clark* v. *Campau* (1869), 19 Mich 324, 328, 329, wherein it was stated:

"The court below ruled in substance that the rights in the water were not in any way dependent upon the direction of the lines on land, but that the lines from the shore should be run, as near as may be, perpendicular to the course of the stream, * * * . We think the ruling was correct.

" * * * Where the stream is straight, the water front will be bounded by lines drawn at right angles with the thread of the stream, protracted until they reach the ends of the shore line. Where the stream curves the same principle applies, and the lines running from the shore would converge or separate, according as the land lay within or without the curve. In all the cases where the ownership of submerged land or of alluvial increments, appurtenant to riparian ownership, has come in question, the only elements which have ever been considered by the Courts, have been the shore lines and the central line or thread of the stream, * * * ."

See, also, *A. M. Campau Realty Co.* v. *City of Detroit* (1910), 162 Mich 243, 245; *The Bay City Gas-Light Company* v. *The Industrial Works* (1873), 28 Mich 182, 183, 184. The boundary lines within which the rights of plaintiffs in the river and land under the river may be asserted, are, therefore, well defined under the foregoing authority, and appear to include within the area of those lines, the island in

question, as plaintiffs contend and defendant road commission does not contest.

"The title to islands is ordinarily vested in the owner of the bed of the waters out of which they arise, provided there has been no separation of such ownership by grant, reservation, or otherwise. * * * Consequently, where the riparian or littoral proprietors have title to the bed of the waters, each is ordinarily the owner of such islands or portions thereof as arise on his side of the thread of the stream or channel, and within his side lines." 56 Am Jur, Waters, § 505, pp 911, 912.

In *Goff* v. *Cougle* (1898), 118 Mich 307, it was held that under a deed of land bounded by a meandered river, the grantee, as a riparian owner, prima facie, takes title to the middle thread of the main channel of the river, and may maintain his rights to an island lying between such channel and the mainland as against one whose land is separated from the island by the main channel of the river, and who does not show a paramount title.

Plaintiffs contend that, based upon the rights accorded a riparian owner, title to the island should be declared to be vested in them. We note that "possession of land", sufficient to accord to the possessor accompanying riparian rights, requires merely an occupancy of the land with intent to control it; a ceasing of occupancy, without abandonment, where no other person has obtained possession; or the right as against all persons to immediate occupancy of land, if no other person is in possession. See 1 Restatement, Torts, 2d, § 157, p 276.

There is no valid distinction which may be drawn between the rights of a riparian owner where such rights are conferred by deed, as in *Goff* v. *Cougle, supra,* and those of an owner who acquires title to the land giving rise to his riparian rights by adverse

possession. In either instance, a riparian owner may be deemed to be in "possession" of the land to which such rights attach, and he has the equivalent of a fee title in the land. The interests and rights vested in the shore owner grow out of, and rest upon, his special connection with such waters as an owner and the fact of title in fee to the shore land. *Thompson* v. *Enz, supra.*

The law of the effect of adverse possession is discussed in 2 CJS, Adverse Possession, §§ 199, 201, and 205 as follows:

" * * * the rule which is of almost universal acceptation is that an adverse possession, * * * vests a full legal title in the possessor." p 803;

"A title by adverse possession, * * * is * * * as good a one as it would be possible to acquire from a former owner of a perfect title or by a grant from the commonwealth or by descent or devise. It is ordinarily a full title in fee." pp 804, 805;

"The title to an accretion follows the title of the riparian land to which it is attached regardless of whether the latter title was acquired by deed or adverse possession." p 806.

37A Words and Phrases, in defining a "riparian owner," states at p 474:

"Title by adverse possession * * * up to the edge of a river and to the river bank creates the occupant a 'riparian owner,' entitled as such to protect his rights against the acts of upper riparian owners."

We also find the following stated as to adverse possession in 5 Thompson, Real Property, Adverse Possession, § 2660, at p 483:**

"The title to land and the rights incident to such title may be acquired by adverse possession without

---

** 1957 Replacement Volume, Adverse Possession, § 2554, p 582.— REPORTER.

regard to whether or not such incidental rights could be acquired independently by any means whatsoever."

We find nothing in the record to indicate that defendant has acquired any rights to the island in question superior to the right inuring to plaintiffs under the foregoing authority. We rule that plaintiffs, as owners of shoreline property acquired in part by deed, and in part, as the trial court found, by adverse possession, are the owners of the island pursuant to the law of riparian rights because it is situated on their side of the thread of the Grand River and within the exterior boundaries of their portion of the main land abutting the river, as extended perpendicular to the thread of the river.

Reversed for entry of judgment according plaintiffs title to parcel C by reason of their riparian ownership rights.

All concurred.