# STATE OF MICHIGAN

# COURT OF APPEALS

KEITH GOODRICH and
SUSAN GOODRICH,

UNPUBLISHED
August 10, 2017

Plaintiffs-Appellees/Cross-
Appellants,

v

No. 333418
Jackson Circuit Court
LC No. 14-001761-CH

JAMES COOK and
PATRICIA COOK,

Defendants-Appellants/Cross-
Appellees

Before: CAVANAGH, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

Defendants appeal as of right, and plaintiffs cross-appeal, an order granting plaintiffs legal title, by way of adverse possession, to land located in Henrietta Township in Jackson County. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

The property in this litigation relates to four separate parcels: 8638 Coon Hill Road, 8642 Coon Hill Road, 8644 Coon Hill Road, and an L-shaped, .59 acre parcel to the northeast of the others. In 1996, Steven and Judy Snay, intending to convey all four parcels, conveyed only the first three to Michael and Pamela Eldrige. The Eldridges took out a mortgage to purchase the largest parcel, 8638 Coon Hill Road, and executed a land contract for the two smaller parcels, 8642 and 8644 Coon Hill Road. The .59 acre parcel was mistakenly omitted from these transactions and became the subject of this litigation; we refer to it in this opinion as "the disputed property." The Eldridges possessed all four parcels, believing the parcel that was mistakenly omitted was theirs, until, after leading plaintiffs on an observation and inspection of the properties, they conveyed the properties to plaintiffs in September 2005. The disputed property was again omitted from this conveyance by mistake. Plaintiffs began possessing all four parcels, including the disputed property, believing it had been conveyed to them with the other three parcels. In 2010, they began constructing a barn that was partially situated on the disputed property.

-1-

Later that year, plaintiffs defaulted on their mortgage. Because their mortgage did not extend to 8642 and 8644 Coon Hill Road, these two lots were not seized, and after their period of redemption expired, plaintiffs moved into the mobile homes located on these two lots and continued to use the disputed property. Defendants purchased 8638 Coon Hill Road from Fannie Mae in September 2012, they moved into the house on that property, and disputes between the parties about plaintiffs' use of a well and a liquefied petroleum tank on defendants' land arose shortly thereafter. These disputes escalated to verbal threats and taunting, and resulted in a personal protection order being issued against plaintiff Keith Goodrich. Defendants subsequently installed a fence along the eastern boundary of their property that blocked an easement used by plaintiffs for ingress and egress to the mobile home properties and interrupted plaintiffs' access to the water well. During this time, defendants learned that the disputed property had not been conveyed to them. After visiting their local tax assessor, who determined that the disputed property still belonged to the Snays, defendants contacted the Snays, who then deeded the disputed property to them.

Defendants served plaintiffs a notice to quit that requested that they remove their belongings from the disputed property. Plaintiffs refused and claimed superior title to the parcel by adverse possession. Plaintiffs filed an action to quiet title based on their adverse possession claim, an action in the alternative to quiet title based on acquiescence, a claim to an easement across defendants' property, a nuisance claim, and a claim for unlawful interference with a possessory interest ("self-help"). A trial was held on May 4, 2016, and the court awarded the disputed property to plaintiffs. Only the adverse possession claim is on direct appeal, the lower court having granted defendants' motion for summary disposition on all other claims. On cross-appeal, plaintiffs take issue with one of the court's summary-disposition rulings.

## II. STANDARDS OF REVIEW

The question of adverse possession is one of fact. *Port Huron Twp Park Comm v Bluska*, 1 Mich App 599, 600; 137 NW2d 738 (1965). Appeals courts review a lower court's findings of fact for clear error. *De Bruyn Produce Co v Romero*, 202 Mich App 92, 98; 508 NW2d 150 (1993). To the extent issues of law are involved, review is de novo. See, generally, *Aquirre v Dept of Corrections*, 307 Mich App 315, 320; 859 NW2d 267 (2014). We also review de novo a grant of summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

## III. TACKING

To prevail on a claim of adverse possession, plaintiffs must show that they possessed the disputed property openly, adversely, exclusively, and continuously for the statutorily-specified minimum period. See *Burns v Foster*, 348 Mich 8, 14; 81 NW2d 386 (1957), and *Kipka v Fountain*, 198 Mich App 435, 439; 499 NW2d 363 (1993). A party making an adverse possession claim can meet the time requirement by tacking their possessory period to that of their predecessors in interest with whom they are in privity of estate. *Arduino v Detroit*, 249 Mich 382, 384; 228 NW 694 (1930). MCL 600.5801(4) requires that adverse possessors hold land for at least 15 years. See *Kipka*, 198 Mich App at 439. Because plaintiffs were in possession of the disputed property for only nine years at the time of the filing of the complaint, defendants are correct in their assertion that the success of plaintiffs' adverse possession claim depends in part on tacking.

Defendants first argue that there was no privity of estate between plaintiffs and their predecessors in possession. When a deed leaves out disputed property, tacking of possessory periods of successive occupants is permissible if there is an "actual transfer of possession by parol." *Arduino*, 249 Mich at 384. Contrary to defendants' assertion, such a parol reference was made. The Eldridges showed plaintiffs around the properties and the boundary lines as they understood them, and even pointed out a dead tree to mark the boundary in the northeast corner of the disputed property. Also, plaintiffs took actual possession immediately afterwards. As such, there was privity of estate between plaintiffs and their predecessors in interest, and their successive periods of adverse possession may be tacked.

## IV. EXCLUSIVITY

Defendants next challenge the exclusivity of plaintiffs' possession, arguing that the exclusivity of their possession was precluded by defendants' barn (i.e., a barn "belonging" to 8638 Coon Hill Road)[1] being partially on the disputed property and by Fannie Mae's possession of 8638 Coon Hill Road following the foreclosure. To satisfy the exclusivity prong of an adverse possession claim, the adverse possessor's possession must not be shared with the true owner, the public in general, or anyone else. *Marble v Price*, 54 Mich 466, 467-468; 20 NW 531 (1884); *Bachus v West Traverse Twp*, 107 Mich App 743, 747; 310 NW2d 1 (1981), remanded 412 Mich 870 (1981).

The fact that defendants' barn allegedly encroaches on the disputed property does not vitiate the exclusivity element of plaintiffs' adverse possession claim.[2] That defendants *own* a barn that is situated partially on the disputed property does not necessarily mean that they or any prior owners *possessed* the disputed property. Ownership and possession are different concepts,[3] and adverse possession jurisprudence is concerned with possession, not ownership. Similarly, Fannie Mae's seizure of any parcel other than the disputed property is not dispositive regarding the title of the disputed property. Fannie Mae seized the parcel that was secured by plaintiffs' mortgage—8638 Coon Hill Road—and *only* that parcel. Defendants have not set forth anything in their appellate brief indicating that Fannie Mae possessed the barn, and we will not attempt to make defendants' arguments for them. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998).

The lower court did not err in finding that plaintiffs' possession was exclusive.

---

[1] This is a separate structure from the barn constructed by plaintiffs.

[2] We further note that defendants provide inadequate citations to the record and to controlling authorities in advancing their argument about the barn. See *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003) (discussing inadequate briefing).

[3] Ownership is described as "[t]he bundle of rights allowing one to use, manage and enjoy property, including the right to convey it to others." *Black's Law Dictionary* (10th ed). On the other hand, possession is "the exercise of dominion over property." *Id.*

## V. CONTINUITY

Defendants next argue that plaintiffs' possession of the disputed property was not continuous because plaintiffs' failure to move into the mobile homes on 8642 and 8644 Coon Hill Road immediately after the foreclosure on 8638 Coon Hill Road constituted abandonment of the disputed property. For their possession to have been discontinuous, plaintiffs would have needed to abandon the property, see, generally, *Hanson v Way Estate*, 25 Mich App 469, 475; 181 NW2d 537 (1970), use the property only intermittently, *Ennis v Stanley*, 346 Mich 296, 302-303; 78 NW2d 114 (1956), or use it in a manner otherwise inconsistent with the rights of an owner, see *von Meding v Strahl*, 319 Mich 598, 613-614; 30 NW2d 363 (1948). Defendants' argument is, again, misguided because where plaintiffs were living during the time between the foreclosure and their moving into the mobile homes is immaterial in the present case. The record adequately shows that, regardless of where they were living, plaintiffs had continued possession and control over the disputed property before, during, and after the foreclosure. There is no evidence to suggest that plaintiffs used the property intermittently or in a manner inconsistent with the rights of an owner. Nor did plaintiffs abandon the disputed property. Defendants misuse the word "abandon." It does not merely mean "leave"; it describes acts by the owner that manifest a present intent to relinquish the property. See *Ludington & N Ry v Epworth Assembly*, 188 Mich App 25, 33; 468 NW2d 884 (1991). There are no facts in the record that indicate that plaintiffs, at any point, intentionally relinquished their claim to the disputed property.

The trial court did not err in finding that plaintiffs satisfied the continuity element of their adverse possession claim.

## VI. HOSTILITY

Defendants contend that plaintiffs' possession was not hostile for three reasons. First, they note that plaintiffs did not learn that they did not own the disputed property until defendants learned about the conveyance mistake. They argue that if plaintiffs were unaware that the disputed property was not part of their property, their possession of it could not have been adverse or hostile. Second, defendants argue that there must have been clearly defined boundaries between the properties for plaintiffs' possession of the disputed property to be hostile. Third, defendants note that, during four years of their possession, the Eldridges, plaintiffs' predecessors, held 8642 and 8644 Coon Hill Road by way of a land contract from the Snays. Defendants argue that, because of this land contract, any possession during this time was by permission. Defendants claim that a period of occupancy under a permissive right cannot be considered as hostile and the time of such period cannot be tacked onto a period of hostile occupancy in an adverse possession case. See *Fractional Sch Dist v Beardslee*, 248 Mich 112, 116; 226 NW 867 (1929) (stating that permissive possession is not hostile).

Defendants' arguments are unavailing. Michigan rejects the "aggressive trespass standard," which requires an adverse possessor to know the land they are claiming does not belong to them. See, generally, *Gould v Fiero*, 262 Mich 467, 469-470; 247 NW 719 (1933). Also, contrary to defendants' argument, a lesser hostility standard does not apply only when

there is a clear, recognizable boundary, as they seem to extrapolate from *DeGroot v Barber*, 198 Mich App 48, 51; 497 NW2d 530 (1993).[4] In Michigan, all that is actually required for one's possession to be adverse is a lack of permission, *Mumrow v Riddle*, 67 Mich App 693, 698; 242 NW2d 489 (1976), and claiming title "to the exclusion of all others," *Arduino*, 249 Mich at 386, both of which are satisfied here.

We also find no basis for reversal with respect to defendants' third argument. First, defendants cite no authority to support their position. See *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003) (a party may not leave it to this Court to search for authority to support its position). In addition, there was no "permission" to use the disputed property because it was omitted from the contracts in question (both from the land contracts and from the mortgage).[5] The lower court properly relied on *Dubois v Karazin*, 315 Mich 598; 24 NW2d 414 (1946), in finding for plaintiffs.

We find no basis for reversal.

## VII. APPLICATION OF MCL 600.2918

On cross-appeal, plaintiffs raise the issue of defendants' allegedly unlawful interference with a possessory interest in connection with the situation involving the water well. Plaintiffs argue that the lower court erroneously granted summary disposition to defendants under MCL 600.2918(2), when it should have analyzed the issue under MCL 600.2918(1). The statutes read:

(1) Any person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force, is entitled to recover 3 times the amount of his or her actual damages or $200.00, whichever is greater, in addition to recovering possession.

(2) Any tenant in possession of premises whose possessory interest has been unlawfully interfered with by the owner is entitled to recover the amount of his or her actual damages or $200.00, whichever is greater, for each occurrence and, if possession has been lost, to recover possession. . . . [U]nlawful interference with a possessory interest includes 1 or more of the following:

(a) Use of force or threat of force.

---

[4] *DeGroot* stands for the rule that when a landowner takes possession of land of an adjacent landowner and the possession manifests intent to claim title to land bordering a visible, recognizable boundary, regardless of the true boundary line, the possession is hostile and adverse possession may be established. *DeGroot*, 198 Mich App at 51. It does *not* mean that an adverse possessor's claim necessarily fails if the adverse possessor does not know the land is not his or there is no visible boundary.

[5] Defendants themselves, in their appellate brief, refer to permissive use of the "mobile home properties." At issue here is the disputed property.

(b) Removal, retention, or destruction of personal property of the possessor.

(c) Changing, altering, or adding to the locks or other security devices on the property without immediately providing keys or other unlocking devices to the person in possession.

(d) Boarding of the premises that prevents or deters entry.

(e) Removal of doors, windows, or locks.

(f) Causing, by action or omission, the termination or interruption of a service procured by the tenant or that the landlord is under an existing duty to furnish, which service is so essential that its termination of interruption would constitute constructive eviction, including heat, running water, hot water, electric, or gas service.

(g) Introduction of noise, odor, or other nuisance.

The trial court found that plaintiffs were not tenants as specified in subsection 2, and consequently granted summary disposition to defendants on the claim for unlawful interference with a possessory interest.

Even if the court had considered plaintiffs' claim under subsection 1 instead of 2, it would have properly been dismissed. Subsection 1, by obvious implication, requires that plaintiffs be ejected or put out of *their* lands, and they were not. They were denied access to the well on *defendants'* land. Defendants had no contractual obligation or duty to furnish access to the well to plaintiffs, and could rescind their permission to access it at any time. This was so despite plaintiffs' contention that the well was specified in a recorded easement. Denying plaintiffs access to a well in the easement did not amount to ejecting them from their lands as stated in the statute. The easement in which the well was located was specifically for ingress and egress, not well access. One cannot expand the uses of an easement. See *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 41; 700 NW2d 364 (2005).

Affirmed.

/s/ Mark J. Cavanagh
/s/ Patrick M. Meter
/s/ Michael J. Kelly