## WALKER *v.* BOWEN.

1. ADVERSE POSSESSION—BURDEN OF PROOF.

The burden of proof in suit to quiet title to land on basis of adverse possession of plaintiffs' predecessor in title is to establish that the predecessor for the statutory period was in actual, continued, visible, notorious, distinct and hostile possession of the disputed parcel under a claim of ownership during such period (CL 1948, § 609.1).

2. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—QUIETING TITLE.

A suit to quiet title is heard *de novo* by the Supreme Court, since it is an equity case.

3. ADVERSE POSSESSION—INTENT—EVIDENCE.

Testimony of plaintiffs' predecessor in title to 10 x 12-rod tract of land which was so fenced when he acquired possession as to include a 14-foot strip on east side thereof to which defendant had record title, that he intended to and did occupy all the land fenced in, even to the extent of erecting a chicken coop and a barn thereon, evidenced occupancy of entire fenced tract under a claim of right and with the intention of holding it as his own.

4. SAME—CLAIM OF TITLE.

It is not the knowledge or belief that another has a superior title, but the recognition of that title that destroys the adverse character of possession, a claim of title or claim of right being essential to adverse possession.

REFERENCES FOR POINTS IN HEADNOTES

[1] 1 Am Jur, Adverse Possession §§ 126 *et seq.*, 246.
[2] 3 Am Jur, Appeal and Error § 815.
[4] 1 Am Jur, Adverse Possession § 188.
[5, 7, 8] 1 Am Jur, Adverse Possession § 189.
[9] 44 Am Jur, Quieting Title § 45.
[9] What constitutes cloud on title removable in equity. 78 ALR 24, 210.

5. SAME—INTENT—EVIDENCE—ACTS OF OWNERSHIP.
    A claim of adverse possession may be asserted by openly ex-
    ercising acts of ownership with the intention of holding the
    property as his own to the exclusion of all others.

6. SAME—POSSESSION—BOUNDARY—RECORD TITLE.
    Title by adverse possession was acquired of disputed parcel of
    land, where possession and occupation thereof continued for
    more than statutory period, although boundary thus established
    was not the true line according to possessor's record title (CL
    1948, § 609.1).

7. SAME—HOSTILITY—PRESUMPTIONS.
    Possession that is visible, open, notorious and distinct will be
    presumed to be hostile.

8. SAME—CLAIM OF RIGHT—INTENT—EVIDENCE—CONSTRUCTION OF
    BUILDINGS.
    The construction of buildings on land to which title is now
    claimed by adverse possession must be regarded as an unequiv-
    ocal assertion of a claim of right and of an intention to
    take and hold possession of the land.

9. QUIETING TITLE—ADVERSE POSSESSION.
    Parties who established title in themselves to disputed strip
    of land included within fences of land occupied by their
    grantor, but not covered by his record title, by reason of his
    adverse possession for statutory period under claim of right,
    were entitled to relief by way of decree quieting title in
    them as against holder of record title (CL 1948, § 609.1).

Appeal from Oakland; Holland (H. Russel), J.
Submitted January 11, 1952. (Docket No. 42, Cal-
endar No. 45,242.) Decided April 7, 1952.

Bill by Robert E. Walker and wife against Emma
K. Bowen to quiet title to land. Decree for defend-
ant. Plaintiffs appeal. Reversed and decree en-
tered quieting title.

*Leithauser, Leithauser & Tobias,* for plaintiffs.

*George A. Cram,* for defendant.

CARR, J. Plaintiffs herein brought suit in equity to quiet title to a small parcel of land located in Farmington township, Oakland county. They alleged in their bill of complaint that they and their immediate grantor had occupied and controlled the premises for a period of over 15 years immediately preceding the starting of the suit, and that they had been "in actual, continued, visible, notorious, distinct, and hostile possession of the same under a claim of ownership, during said period." It was further averred that the defendant claimed an interest in the property. A decree was sought adjudging plaintiffs to be the owners of said premises in fee.

Defendant filed an answer to the bill of complaint, asserting that plaintiffs' cause of action was not well founded and that the matter in dispute should be adjudged in an action in ejectment on the law side of the court. She asked that the suit be dismissed on the ground indicated. Such motion was subsequently submitted to the trial court and was denied. The trial on the merits resulted in a decree in favor of the defendant, and plaintiffs have appealed.

Plaintiffs rely on adverse possession of the property in dispute by their immediate grantor, Ralph Schulz, from whom they purchased in April, 1947. In August, 1930, Schulz bought from the administrator of an estate land described as follows:

"All that certain piece or parcel of land, situate and being in Farmington township, Oakland county, Michigan, and described as follows, to wit: Commencing on the west line of section 4 at the north corner of lands leased by Geo. W. Button to the Spring Brook Cheese Factory Co., thence east on the north boundary of said Spring Brook Cheese Factory Co. lands 10 rods; thence north parallel with the west section line 12 rods; thence west at right angles 10 rods to the west section line; thence south

on said west section 12 rods to the place of beginning."

Schulz was a witness for plaintiffs on the trial in circuit court, testifying in substance that the property acquired by him was located on the east side of Drake road about a quarter of a mile south of 14-Mile road. He further claimed that he went into possession of the property that he believed was covered by the description in his deed, and that there were fences on the north, east, and south sides. The description in the deed given by Schulz to plaintiffs in April, 1947, was identical in substance with that contained in the conveyance taken by him in 1930. After they received their deed plaintiffs caused a survey to be made, and discovered that their property as described did not include the east 14 feet of the parcel enclosed by the fences above referred to and Drake road on the west. Thereafter Schulz executed a second deed for the purpose of conveying the land that he claimed to have owned. It does not appear to be questioned that the description in the later conveyance covers the land embraced within the fences and the highway on which it fronts. The specific question at issue is the ownership of the 14-foot strip adjacent to the east fence. It is undisputed that defendant is the present holder of the record title to said strip and that she is the owner of property adjoining the land of plaintiffs on the north and east.

At the trial of the case the burden of proof was on the plaintiffs to establish that Schulz occupied the disputed parcel adversely within the requirements of the rule recognized by the bill of complaint. The trial judge concluded, after listening to the testimony and the arguments of counsel, that the proofs did not establish occupancy for more than the statu-

tory period* under a claim of right, or that the possession of plaintiffs' grantor was hostile in character. Appellants insist that such conclusions are not in accord with the evidence. On behalf of defendant it is insisted, in substance, that the proofs on the trial did not show that Schulz intended to claim ownership beyond the actual lines of the property described in the conveyance to him and that, in consequence, title to the disputed strip was not acquired by adverse possession.

The record indicates that it was also defendant's claim in circuit court that Schulz moved the fence on the east side of the land in an easterly direction. Her testimony, and that of her witnesses, relating to the matter is uncertain as to when such action took place, and also as to the distance to which the fence was moved to the east. In his testimony Schulz denied that he moved the fence on the east side, and also denied any change in the line of the north fence, stating that the latter became in such condition that it had to be replaced but that the new fence was on the line occupied by the fence that was there at the time he took possession of the property. He also denied making any statements to the defendant or to anyone in interest in the property to the effect, as claimed by defendant, that if he had taken more land than he was entitled to he would return it or pay for it. With reference to the nature and extent of his possession, the following excerpts from his testimony indicate his claims:

"Q. I will ask you whether or not when you got your deed, you took possession up to and including everything enclosed in those fences that you saw there?
"A. That is right. * * *

* See CL 1948, § 609.1 (Stat Ann § 27.593).

"*Q*. Now, what improvements in the way of buildings were on the parcel back in 1930 at the time you got the deed?

"*A*. Well, I built, immediately after I bought the property, I placed a chicken coop in the same place where the barn is today, that was in 1930.

"*Q*. You say barn?

"*A*. It was a chicken house at the time, I built a chicken house at first.  *  *  *

"*Q*. There is a barn there now up here somewhere in the northeast area?

"*A*. There is.

"*Q*. But the chicken coop which you say you built covered exactly the same area on the ground as the barn that is now there?

"*A*. I put the barn right on the same foundation.

"*Q*. Well, how close to the easterly fence was that chicken coop you built?

"*A*. About 3 or 4 feet, somewhere around 3 or 4 feet, it was over 3 feet because I know in Detroit you got to keep away 3 feet from a line.

"*Q*. Can you state definitely whether or not the chicken coop occupied at least part of the property within 14 feet of the easterly fence?

"*A*. Yes, it does.

"*Q*. And the barn you subsequently built also occupied part of the premises and within 14 feet of the easterly fence?

"*A*. That is right.

"*Q*. You know roughly about how far it sticks over across the imaginary line we have drawn 14 feet west of the easterly fence?

"*A*. Well, I would say the barn is around 3 feet or a little over from the east line, and the barn was approximately around 25 feet long, going west.

"*Q*. Have you ever changed or moved or done anything with the easterly fence since you got that property in 1930?

"*A*. No, I haven't.

"*Q.* Did you ever do anything with the northerly fence?

"*A.* I did.

"*Q.* What did you do with respect to the northerly fence?

"*A.* I replaced it with a new fence in the same place where the old fence was.

"*Q.* We have been talking about the old fence here on this property, you told us about the easterly fence, we mentioned building a chicken coop there, you say that you subsequently built a barn there, you know about when you built the barn on the spot where you originally built this chicken coop?

"*A.* It was the same year but it was warm.

"*Q.* Can you tell us approximately what year you built the new barn?

"*A.* That I built the barn or chicken coop?

"*Q.* The new barn.

"*A.* That would be around in 1932 or 1933.

"*Q.* You don't remember the exact year?

"*A.* No, I don't.

"*Q.* Is that new barn still there on the property?

"*A.* It is.

"*Q.* The barn is on the same foundation?

"*A.* That is right."

The witness further testified that when he sold to plaintiffs he agreed to convey the parcel of land as then fenced, and which he claimed to have occupied since 1930. Plaintiff Robert E. Walker corroborated the testimony of Schulz with reference to the understanding and agreement at the time of the conveyance to plaintiffs, stating that the property at the time was fenced on the north, east, and south, that the fences were represented to him as the boundary lines, and that he understood that he was purchasing the property incorporated within the 3 fences and Drake road. Testimony of Schulz as to the maintenance of the fence on the east, and the fence line on the north, was corroborated by that

of his sister, Mrs. Erma S. Johnson, who was called as a witness for plaintiffs.

This being an equity case it is our duty to hear and determine it *de novo*. While the proofs offered by the plaintiffs are in certain respects contradicted by defendant and her witnesses, our examination of the entire record brings us to the conclusion that the material facts are as claimed by Schulz in his testimony. The question presented is, therefore, whether such facts are sufficient to support plaintiffs' case.

Schulz was in actual possession of the property for more than the statutory period, and it does not appear that any attempt was made by owners of adjoining premises to interfere with such possession. Had he attempted to move the fences on the east and north, as claimed by defendant, it is fair to assume that his action would have been challenged at once by appropriate proceedings. The suggestion that he did not intend to occupy beyond the line that might be shown by a survey as the east boundary of his property is inconsistent with his testimony and with the factual situation. Neither he nor any adjoining property owner undertook to have a survey made. It is a fair inference that when Schulz received his deed, in 1930, all parties concerned regarded the fences as being on the boundary lines of the parcel described in the conveyance. It is apparent that he occupied the property under a claim of right, and with the intention of holding it as his own.

Similar situations have been involved in numerous prior decisions of this Court. In *Smith* v. *Feneley,* 240 Mich 439, it was said:

"The belief or knowledge of the adverse claimant is not as important as his intentions. The intention is the controlling consideration, and it is not the knowledge or belief that another has a superior title,

but the recognition of that title that destroys the adverse character of possession. Claim of title or claim of right is essential to adverse possession, but it is not necessary that an adverse claimant should believe in his title, or that he should have any title. He may have no shadow of title and be fully aware of that fact, but he must claim title. He may go into possession without any claim of title, but his possession does not become adverse until he asserts one; and he may assert it by openly exercising acts of ownership, with the intention of holding the property as his own to the exclusion of all others.

" ' "Claim of title" is where one enters and occupies land, with the intent to hold it as his own, against the world, irrespective of any shadow or color or right or title.' 2 CJ, p 168, § 324.

" 'It is not necessary, however, that the party in possession should have expressly declared his intention to hold the property as his own, nor need his claim thereto be a rightful one. That his acts and conduct clearly indicate a claim of ownership is enough.' 1 RCL, p 706, § 18."

Likewise in *Foster* v. *Wagenaar* (syllabus), 251 Mich 370, it was held:

"Title by adverse possession was acquired where possession and occupation of city lot continued for more than statutory period, although boundary thus established is not true line according to plat."

In *Gould* v. *Fiero,* 262 Mich 467, plaintiffs brought an action of ejectment to recover possession of a narrow strip of land lying between their property and that of defendants. In holding that the latter were entitled to a directed verdict on the basis of adverse possession of the property for more than the statutory period, it was said:

"Although defendants may have been mistaken as to the true line, they took the disputed strip, believing it to be their own, and they have claimed

and held it adversely for more than the statutory period, and hence have title to it by adverse possession. 2 CJ, p 141; *Call* v. *O'Harrow,* 51 Mich 98; *Vanden Berg* v. *DeVries,* 220 Mich 484; *Pugh* v. *Schindler,* 127 Mich 191."

In *Dubois* v. *Karazin,* 315 Mich 598, the Court quoted with approval from *Greene* v. *Anglemire,* 77 Mich 168, as follows:

" 'When the possession is by actual occupation of the possessor, or by his tenants, under claim of title, his possession is visible, open, notorious, distinct, and will be presumed to be hostile. In such case the conditions are all sufficiently complied with to make the possession adverse, and sufficiently notified to other claimants, or parties interested.' "

In accordance with the rule set forth in the language quoted, and with other prior decisions cited by the Court, it was held that the defendant's claim of title by adverse possession was well founded.

In the recent case of *Smith* v. *Crandell,* 332 Mich 44, the factual situation was very similar to that in the case at bar. It was held that plaintiffs had established that their predecessor in title had acquired ownership of the strip of land in dispute by adverse possession, and that the trial court properly decreed, in a suit to quiet title, that the facts justified the granting of the relief sought. See, also, *Gardner* v. *Gardner,* 257 Mich 172; *Fractional School District No. 4 of Golden Township, Oceana County* v. *Hedlund,* 330 Mich 73; *Monroe* v. *Rawlings,* 331 Mich 49.

Under applicable principles of law we find that plaintiffs established with the requisite degree of certainty that title to the strip of land in question in the instant case was acquired by their grantor, and that such title was conveyed to them. The construction of buildings located partially on the 14-foot strip must be regarded as an unequivocal as-

sertion of a claim of right, and of an intention to take and hold possession of the land. The hostile character of such possession under a claim of right follows from the conduct of Schulz, of which defendant and her predecessors in title were charged with notice. We are unable to agree with the conclusion of the trial judge that plaintiffs failed to show all the essential elements of adverse possession. Based on the record before us, it is our conclusion that they established their right to the relief sought.

Counsel for defendant argues here, as he did in the trial court, that plaintiffs were not entitled to maintain a suit to quiet title but should have instituted an action in ejectment. In support of this claim *Warner* v. *Noble,* 286 Mich 654, is cited. That decision may, however, be distinguished from the case at bar on the basis of the facts and issues involved. The trial judge determined the matter of the jurisdiction of equity in the instant case adversely to defendant's claim, and properly so.

A decree will enter in this Court vacating the decree of the trial court, and granting to plaintiffs the relief sought. Plaintiffs may have costs.

NORTH, C. J., and DETHMERS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.