*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BH RENTALS, LLC,

        Plaintiff-Appellee,

v

SAND HILL COMMUNITY, LLC, and FIRST
BANKERS TRUST COMPANY, NA,

        Defendants-Appellants.

UNPUBLISHED
April 08, 2025
10:53 AM

No. 370524
Berrien Circuit Court
LC No. 2023-000106-CH

Before: GADOLA, C.J., and WALLACE and ACKERMAN, JJ.

PER CURIAM.

Defendant Sand Hill Community[1] appeals the trial court's judgment quieting title in plaintiff BH Rentals to an easement one rod wide along the southeast border of "Parcel 1," owned by Sand Hill. We agree with the trial court that a valid express easement exists, but we hold that the trial court improperly expanded the geographic scope of that express easement beyond what the chain of title supports. Accordingly, we affirm in part and reverse in part.

## I. FACTS AND PROCEDURAL HISTORY

Sand Hill and BH Rentals own adjacent parcels of land in Berrien County, with Sand Hill's property directly north of BH Rentals'. Both parcels have as their eastern boundary a 100-foot-wide strip of land owned by a railroad, which runs in a north-northeasterly direction. On the opposite side of the railroad from BH Rentals' parcel is St. Joseph Avenue, the nearest public roadway. When St. Joseph Avenue is aligned with BH Rentals' property, it runs parallel to the railroad. As it reaches the northern edge of BH Rentals' property, it curves northward, crossing

---

[1] Technically, both Sand Hill and First Bankers Trust Company are defendants-appellants. However, because there is no dispute that First Bankers' interest in this case is identical to Sand Hill's, this opinion will, for ease of reference, refer only to Sand Hill in the singular.

the railroad's land and providing Sand Hill with direct access.  BH Rentals claims an easement across Sand Hill's property to reach St. Joseph Avenue.

The dispute arises from certain reservations made during a series of conveyances that ultimately resulted in Sand Hill's ownership of its property.  The relevant sequence began in 1906, when Otto Retzlaff acquired a 15-acre parcel that is the ancestor of the disputed land.  In 1909, he conveyed the northerly five acres of that parcel to Fred Retzlaff, creating Parcel 1-1909.[2]  That conveyance included a reservation stating that Otto was "[r]eserving a right of way one rod wide on south east corner of same along by the right of way of railroad for passage in and out."  BH Rentals now owns the 10-acre parcel that Otto retained, while Parcel 1-1909 is part of the land now owned by Sand Hill.

The five-acre parcel conveyed to Fred Retzlaff changed hands many times.  After conveyances in 1920 and 1923, it belonged to Jan and Johanna Kubik.  In 1924, the Kubiks acquired a 5-acre parcel just to the north of Parcel 1-1909, which all parties refer to as Parcel 1-1924.  In 1925, the Kubiks simultaneously conveyed both Parcel 1-1909 and Parcel 1-1924 to Samuel Chromcik, and in 1927 Chromcik in turn simultaneously conveyed both parcels to George and Eva Hucko.  The 1925 and 1927 conveyances used identical language and provided as follows, with the language as to Parcel 1-1924 numbered [1] and the language as to Parcel 1-1909 numbered [2]:

> [1] Part of the Northeast quarter (NE¼) of Section twenty-one (21) Township five (5) South, Range nineteen (19) west described as follows: the north 7½ acres of the southeast-quarter (SE¼) of the Northeast quarter (NE¼) of Section 21, Township 5 south, Range 19 west except [a 2.5-acre parcel], containing five acres of land. [2] Also the North 5 acres of the South 25 acres, West of the railroad right of way of the Southeast quarter (SE¼) of the Northeast quarter (NE¼) of Section 21, Township 5 South, Range 19 West being the North 5 acres of the same premises deeded to Otto Retzlaff by Alguire Sept. 4th 1906, reserving a right of way one (1) rod wide on the Southeast corner of the same along the right of way of the railroad for passage in and out, containing five acres more or less,  . . . .

While occurring simultaneously, these conveyances separately described Parcel 1-1909 and Parcel 1-1924, and the language reserving an easement applied only to Parcel 1-1909.

In 1953, George and Eva Hucko conveyed both parcels to Fred and Marie Brecht.  However, instead of separately describing the parcels, they singularly described the entire 10-acre parcel as follows:

---

[2] In the lower court and in Sand Hill's briefing, this property was referred to as Parcel 1-1906.  In its brief before this Court, BH Rentals argues that it should properly be referred to as Parcel 1-1909.  In its reply, Sand Hill expresses some incredulity as to why BH Rentals would redefine what had until then been an agreed-upon term.  Regardless of whether BH Rentals is right to call this a "correction," we agree that Parcel 1-1909 is the more appropriate label.

The North 12.5 acres of the Southeast Quarter (SE¼) of the Northeast Quarter (NE¼) of Section Twenty-one (21), Township Five (5) South, Range Nineteen (19) West, except [a 2.5-acre parcel], Ten acres more or less, reserving a right of way 1 rod wide on the Southeast corner of the same along by the right of way of the railroad for passage in and out.

That created what is known for the purposes of this litigation as "Parcel 1." Parcel 1 was subsequently conveyed several more times, none of which made specific reference to the "right of way 1 rod wide on the Southeast corner of the same along by the right of way of the railroad," although some made general references to the property being "subject to restrictions and easements of record" (or similar language). Parcel 1 ultimately ended up in the hands of Sand Hill in 2021, at which time it gave co-defendant First Bankers Trust Company a mortgage on the parcel.

In May 2023, BH Rentals filed this quiet-title action. Its three-count complaint asserted three theories for its claimed easement across Sand Hill's property to St. Joseph Avenue: (1) a valid express easement; (2) an easement by necessity; and (3) an easement implied from a quasi-easement. BH Rentals then moved for summary disposition, and Sand Hill responded with its own motion for summary disposition.

The trial court held in favor of BH Rentals, finding that the 1953 conveyance that merged the descriptions of Parcel 1-1909 and Parcel 1-1924 created an express easement benefiting BH Rentals' property. It rejected Sand Hill's argument that the conveyance's failure to expressly name BH Rentals' property as the dominant tenement was fatal to the easement's existence.[3] The court also held that the purpose of the easement was to provide external access to BH Rentals' property, meaning that the geographic scope of the easement extended across what had formerly been Parcel 1-1924. Finally, it said—in response to Sand Hill's pleaded affirmative defense that the Marketable Record Title Act (MRTA), MCL 565.101 *et seq.*, extinguished BH Rentals' easement interest—that the MRTA was inapplicable but that if it did apply, BH Rentals had filed adequate notice under the statute to preserve its easement interest. Sand Hill now appeals.

## II. ANALYSIS

Because an action to quiet title is brought in equity, we review it de novo. *Walker v Bowen*, 333 Mich 13, 20; 52 NW2d 574 (1952). We also review de novo trial court rulings on motions for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When a motion is brought under MCR 2.116(C)(10), the court "considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion," and may grant the motion if that evidence "show[s] that there is no genuine issue in respect to any material fact,

---

[3] Based on Sand Hill's briefing before this Court, it appears the trial court may have misunderstood Sand Hill's argument about failing to expressly name the dominant tenement. Sand Hill argued that the 1953 conveyance did not create an easement over the *entire* Parcel 1, which was apparently an effort to dispute the easement over Parcel 1-1924 without affirmatively conceding that an express easement existed over Parcel 1-1909.

and the moving party is entitled to judgment as a matter of law." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

"An easement is a right which one proprietor has to some profit, benefit or lawful use, out of, or over, the estate of another proprietor." *Morrill v Mackman*, 24 Mich 279, 284 (1872). As an interest in land, any conveyance of an easement must be in writing. See *Burling v Leiter*, 272 Mich 448, 454; 262 NW 388 (1935). "In order to create an express easement, there must be language in the writing manifesting a clear intent to create a servitude. Any ambiguities are resolved in favor of use of the land free of easements." *Forge v Smith*, 458 Mich 198, 205; 580 NW2d 876 (1998) (footnotes omitted).

While the trial court recognized a single easement across Parcel 1, Sand Hill's arguments on appeal distinguish between the portion of the easement crossing what was formerly Parcel 1-1909 and the portion crossing what was formerly Parcel 1-1924. As a result, we address them separately.

## A. PARCEL 1-1909

Sand Hill contends that the easement over Parcel 1-1909 has "terminated" due to "impossibility," pointing to *MacLeod v Hamilton*, 254 Mich 653; 236 NW 912 (1931). Sand Hill argues that even if an easement exists across Parcel 1-1909, it does not provide BH Rentals with access to St. Joseph Avenue. As a result, Sand Hill claims that the easement fails to fulfill its intended purpose of providing "passage in and out," as stated in several conveyances since 1909.

We disagree. The issue in *MacLeod* is distinguishable from this case's circumstances. In *MacLeod*, an easement had been granted to the county government in 1876 for the purpose of constructing a drain near a particular subdivision.

> No ditch or drain was ever constructed under the easement, and the proposed drainage was provided elsewhere. For fifty-four years this easement has been dormant and renounced by the county in the establishment of the drainage elsewhere. Such an easement as this can be extinguished by abandonment of purpose or by renunciation showing that other means employed serve the purpose. [*Id*. at 656.]

In light of the county having provided drainage via other means, the Supreme Court held that the easement had been forfeited. "The grant was of an easement for drainage purposes only, and when the contemplated purpose was abandoned by establishment of the drain elsewhere the right of way ceased and the easement was but a cloud." *Id*. at 656-57.

This case is different. Sand Hill has provided no evidence that BH Rentals' need for access to its parcel is any less real today than it was when Otto Retzlaff created the easement in 1909. No alternative route to the parcel exists, meaning—under the *MacLeod* test—that the *purpose* for the creation of the easement is as present as ever. That contrasts *MacLeod*, where the "easement ha[d] been dormant and renounced by the county in the establishment of the drainage elsewhere." *Id*. at 656.

Sand Hill avers that because an easement over Parcel 1-1909 does not provide a complete access solution—inasmuch as it does not directly connect BH Rentals' property to St. Joseph Avenue—the easement should be disregarded. However, Sand Hill cites no authority suggesting that an express easement can be deemed ineffective merely because it does not provide a complete solution to the problem it is addressing. Indeed, Sand Hill appears to concede that an express easement *was* created in 1909 but speculates that at an unknown time in the ensuing decades an unknown change in geography has rendered it "impossible" to use. We are unpersuaded and conclude the trial court did not err in continuing to recognize the viability of the easement across what was formerly Parcel 1-1909.

## B. PARCEL 1-1924

As to Parcel 1-1924, Sand Hill argues that the 1953 conveyance failed to expressly name what is now BH Rentals' property as the dominant tenement, which, in its view, precluded the creation of a valid express easement. While we do not consider the omission of BH Rentals' property from the conveyance to be the fundamental problem, we agree with Sand Hill that the 1953 conveyance does not adequately communicate an intent to confer an easement across Parcel 1-1924.

As we have already held—and as all parties seem to agree—a valid express easement was created in 1909 when Otto Retzlaff conveyed Parcel 1-1909 to Fred Retzlaff. After being conveyed multiple times, Parcel 1-1909 came into the possession of the Kubiks, who also acquired Parcel 1-1924. In 1925, the Kubiks simultaneously conveyed both parcels, and in 1927 both parcels were again conveyed together to the Huckos. The language in those conveyances made clear that the easement benefiting BH Rentals' property applied only to Parcel 1-1909. When the Huckos conveyed both parcels in 1953, they redescribed the 10 acres as a single lot and said that in doing so they were "reserving a right of way 1 rod wide on the Southeast corner of the same along by the right of way of the railroad for passage in and out." Because that language was not explicitly limited to Parcel 1-1909, BH Rentals argues—and the trial court agreed—that it extended the existing easement to also traverse Parcel 1-1924.

We agree with Sand Hill that the history of the conveyances does not indicate an intent to create an express easement across what was formerly Parcel 1-1924. In *Choals v Plummer*, 353 Mich 64; 90 NW2d 851 (1958), the Supreme Court made clear that the surrounding facts and circumstances of a conveyance can be considered when construing the terms of a conveyance. Here, Sand Hill asks us to conclude that the Huckos owned Parcel 1-1909 and Parcel 1-1924 for 26 years, from 1927 until 1953, without ever granting an express easement across Parcel 1-1924 to BH Rentals' predecessor in title. Then, after more than a quarter-century of ownership, the Huckos decided to provide gratuitous assistance to BH Rentals' predecessor in title by taking the express easement across Parcel 1-1909 and extending it across Parcel 1-1924 just as they were relinquishing ownership of the property. That interpretation is implausible. It is far more likely that in the 1953 conveyance, the Huckos sought to simplify the terms of what was being conveyed by combining the description of the two parcels into one. In doing so, they likely intended to maintain the existing express easement by reciting the same language that had governed Parcel 1-1909 for the previous 44 years—that there was an easement "along by the right of way of the railroad for passage in and out." Absent knowledge of the conveyance history, one might interpret the 1953 conveyance as extending the easement's scope. However, in light of the historical

context, we find it unlikely that the 1953 conveyance is evidence of an intention to expand the existing easement beyond its existing geographic boundaries.

That interpretation is also more consistent with other principles of easement law. The Court in *Choals* said that "[a]n attempted reservation for the benefit of a stranger to the conveyance is ineffective." *Id*. at 71. While there is some suggestion in the caselaw that this should not be construed as a per se bar on such conveyances, see *Mott v Stanlake*, 63 Mich App 440, 442; 234 NW2d 667 (1975), there must at minimum be some indication of the grantor's *intent*. We find no such intent in the 1953 conveyance. Additionally, "[a]ny ambiguities are resolved in favor of use of the land free of easements." *Forge*, 458 Mich at 205. While the 1909 conveyance unambiguously created an express easement across Parcel 1-1909, the 1953 conveyance does not unambiguously extend that easement across Parcel 1-1924. Given that ambiguity, we conclude that the trial court erred in holding that BH Rentals has an express easement across Parcel 1-1924.[4]

We affirm the judgment of the trial court to the extent that it recognized an express easement over Parcel 1-1909 but reverse its finding that the easement extends over Parcel 1-1924. This matter is remanded to the trial court for consideration of BH Rentals' remaining counts. No costs are awarded under MCR 7.219(A), neither party having prevailed in full.

/s/ Michael F. Gadola
/s/ Randy J. Wallace
/s/ Matthew S. Ackerman

---

[4] Sand Hill also raises the trial court's decision under the MRTA as an issue on appeal. However, it appears to concede that this issue is intertwined with the question of whether BH Rentals has an express easement. Because BH Rentals filed a notice of claim under MCL 565.103(1), it preserved whatever interest in an easement it had against the application of the MRTA. As Sand Hill argues in its brief on appeal, "[a]s there was never a valid grant of an easement in favor of Plaintiff's Property as to Parcel 1-1924, there was nothing to preserve." We find no need to consider this question separately.