*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARLES CHESHURE,

               Plaintiff/Counterdefendant-Appellee,

and

NAZEK A. GAPPY,

               Plaintiff-Appellee/Cross-Appellant,

V

ELAINE MARRERO,

               Defendant/Counterplaintiff-
               Appellant/Cross-Appellee.

UNPUBLISHED
February 13, 2026
8:44 AM

No. 370662
Oakland Circuit Court
LC No. 2020-181296-CH

Before: CAMERON, P.J., and M. J. KELLY and YOUNG, JJ.

PER CURIAM.

In this case involving a boundary dispute between neighbors, defendant/counterplaintiff, Elaine Marrero, appeals as of right the trial court order quieting title to the disputed area in favor of plaintiff/counterdefendant, Nazek Gappy.[1] Marrero argues that the trial court erred by finding that she had failed to establish title to a 20 x 10 area of land on Gappy's property by either adverse possession or by acquiescence to the boundary for the statutory period of 15 years. She also asserts that the trial court erred by failing to rule in her favor on her claim of conversion, by failing to award her damages, and by failing to enter a default judgment against Gappy's predecessor in interest, plaintiff/counterdefendant, Charles Cheshure. In a cross-appeal, Gappy argues that the trial court erred by failing to award her damages for Marrero's trespass onto her property and by failing to award her attorney fees for her representation of herself and her implied representation

---

[1] Gappy represented herself in the lower court proceedings. She is also representing herself on appeal and cross appeal.

of Cheshure. For the reasons stated in this opinion, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS

This case involves a property-line dispute. On May 19, 2020, Cheshure filed a quiet-title action asserting that he owned the property located at 2815 Devondale in Rochester Hills, which he had purchased on January 31, 2020. He alleged that Marrero, who owned the adjacent parcel, had been placing her personal property on a portion of his and his grantor's real property since approximately 2012. Cheshure sought to quiet title to the disputed portion of property, and he alleged trespass and nuisance. In response, Marrero filed a counterclaim against Cheshure seeking a declaratory judgment that she had acquired the disputed portion of property by adverse possession. She also sought a declaration that Cheshure had wrongfully destroyed her personal property and sought damages, attorney fees, and costs. Marrero later added a claim for acquiescence.

Both Marrero and Cheshure sought summary disposition. Cheshure, however, did not respond to Marrero's motion, nor did he appear at the hearing held on that motion. The court, therefore, granted Marrero summary disposition on the unopposed motion. Cheshure moved for reconsideration, contending that he had not received a copy of the motion and stating that he had sold the subject property to Gappy in June 2021. Gappy, who is a licensed attorney, sought permission to join the case as a plaintiff. As part of that effort, Cheshure assigned his rights and obligations in the litigation to Gappy. The court ultimately granted Gappy permission to join, but refused to set aside the summary judgement entered in favor of Marrero. Gappy appealed to this Court, which entered an order directing, in part, that the summary disposition motion be reconsidered.[2] The court then set the order summarily granting summary disposition aside. The parties filed additional summary disposition motions, but the court denied them because there were genuine issues of material fact.

The matter proceeded to a three-day bench trial conducted via "Zoom." The trial court took judicial notice of its orders, opinions, and pleadings, but stated that the attachments to those documents would not be automatically admitted. Instead, the exhibits would need to be verified through witness testimony and no affidavits would be admitted without the affiant's testimony. Deeds were admitted establishing the chain of title for each property. As it relates to Marrero's property, commonly known as 2771 Devondale (the Marrero property), the record reflects that the property was conveyed to her on December 16, 1998, by Brian Bishop. As it relates to Gappy's property, commonly known as 2815 Devondale (the Gappy property), the chain of title reflects several owners.

Brian Bishop and Brandy Bishop conveyed the property to Michael Phelps on January 5, 2001; Phelps conveyed the property to Peter Zwirko on December 22, 2005; Zwirko lost the property to foreclosure and, following a sheriff's sale, the property was conveyed to the Federal

---

[2] *Cheshure v Marrero*, unpublished order of the Court of Appeals (Docket No. 358932), entered November 24, 2021.

National Mortgage Association; the Federal National Mortgage Association conveyed the property to Lek Kalaj on May 30, 2013; Kalaj conveyed the property to John Brochue on March 3, 2016; Brochue conveyed the property to Cheshure on February 6, 2020, and Cheshure conveyed the property to Gappy on June 9, 2021.

At trial, the court heard testimony from the following property owners: Zwirko, Kalaj, Brochue, Gappy, and Marrero. The court also heard testimony from Marrero's handyman, Randy Miller, and from several witnesses relating to the destruction of Marrero's fence and property by Cheshure.[3] Finally, the court heard testimony from Doris and Tara Lemcool, who testified regarding their observations of the boundary dispute and to Marrero's trespass and destruction of vegetation in the disputed area. Cheshure did not appear at trial, and Gappy informed the court that she was not representing him. Following the trial, the court entered an order quieting title in favor of Gappy and finding that Marrero had not established title to the disputed area by adverse possession or acquiescence. The court found that the claims against Cheshure were moot. It also found that Gappy had established her claim for trespass, but that she had not established any damages. Gappy filed post-trial motions for damages and attorney fees, both of which the court denied. This appeal follows.

## II. STANDING

As an initial matter, Marrero suggests that Cheshure and Gappy lacked standing to challenge her claim to the disputed area because she acquired title to it either in 2013 or 2019. Marrero cites no legal authority in support of her position. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Consequently, this aspect of Marrero's argument is abandoned.

## III. ADVERSE POSSESSION

## A. STANDARD OF REVIEW

The trial court found that Marrero did not meet her burden of establishing the elements of adverse possession. An action to quiet title is reviewed de novo. *Walker v Bowen*, 333 Mich 13, 20; 52 NW2d 574 (1952). Likewise, we review de novo claims for adverse possession. *Beach v Lima Twp*, 283 Mich App 504, 508; 770 NW2d 386 (2009). The trial court's factual findings following a bench trial are reviewed for clear error. *Patel v Patel*, 324 Mich App 631, 633; 922 NW2d 647 (2018); see also *Beach*, 283 Mich App at 524 n 7. "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made." *Patel*, 324 Mich App at 633 (quotation marks and citation omitted). We "afford deference to the trial court's superior

---

[3] At trial, Gappy stated that Cheshure's destruction of Marrero's personal property was "at issue." The testimony that he destroyed her property, however, was unrefuted.

ability to judge the credibility of the witnesses who appear before it." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

"A party claiming adverse possession must show clear and cogent proof of possession that is actual, continuous, open, notorious, exclusive, hostile, and uninterrupted for the relevant statutory period." *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018). The statutory period for adverse possession is 15 years. MCL 600.5801(4). Clear and cogent proof is "more than a preponderance of the evidence, approaching the level of proof beyond a reasonable doubt." *Walters v Snyder*, 225 Mich App 219, 223; 570 NW2d 301 (1997). "The evidence offered in support of adverse possession must be strictly construed with every presumption being exercised in favor of the record owner of the land." *Rozmarek v Plamondon*, 419 Mich 287, 292; 351 NW2d 558 (1984) (quotation marks and citation omitted). "When the elements of adverse possession have been met, the law presumes that the true owner, by his acquiescence, has granted the land, or interest to the land, so held adversely." *Marlette Auto Wash, LLC*, 501 Mich at 202 (quotation marks and citation omitted).

"A cause of action does not accrue until the property owner of record has been disseised of the land." *Beach*, 283 Mich App at 512 (quotation marks and citation omitted). "Disseisin occurs when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership." *Id*. (quotation marks and citation omitted). See also *Wengel v Wengel*, 270 Mich App 86, 92; 714 NW2d 371 (2006). The trial court found that the statutory period for adverse possession ran from June 2013 until May 2020.

On appeal, Marrero suggests that her claim for adverse possession accrued in December 1998 based upon her use of "walking trails" in the disputed area. In support, she directs this Court to testimony that when she purchased her property on December 16, 1998, there were already walking trails in the disputed area. She believed that the area with the trail was part of her property and used it as such. The trial court found that there were inconsistencies in Marrero's testimony when compared to her prior statements under oath. Regardless, the court found credible Marrero's testimony that she had used the walking trails that existed when she purchased her property in 1998, but it did not find her use to be exclusive. Exclusive use is a necessary element of adverse possession. *Marlette Auto Wash, LLC*, 501 Mich at 202. Marrero did not testify to exclusive use starting in 1998, nor did she testify to any actions that could be reasonably construed as having deprived the true owner of possession or displaced the true owner from exercising the powers and privileges of ownership. See *Beach*, 283 Mich App at 512. As such, she did not present clear and cogent evidence that disseisin of the true owner occurred in 1998.

Marrero alternatively argues that her claim accrued in 2004. Marrero testified that, in 2004, she had a fence built along what she assumed was the property line, and she added landscaping and other small pieces of fence to the area to "extend" the property line. Indeed, she stated that she also put up a vinyl fence and arbor vitae along the boundary line. She explained that she put

the fence up to establish the boundary line and for privacy.[4]  Marrero's testimony regarding the fence was corroborated by Miller, who testified that he built it for Marrero in the spring of 2004.[5] He added that he had also built a shed in 2004.  Miller stated that the fence that was depicted in trial exhibit 3 was the fence that he built for Marrero.

Gappy presented testimony disputing Marrero's and Miller's testimony that the fence was built in 2004.  Specifically, Zwirko, who purchased the Gappy property in December 2005 and lost it to foreclosure in 2011, testified that the only fence on the property was an "L" shaped fence on his "side" of the property that had been built by his predecessor in interest.  He testified that the photograph in trial exhibit 3 was not the same L-shaped fence that was on his property.  He stated that the fence in the photograph looked "totally different" and was longer.

The trial court did not resolve this factual dispute.  Instead, the court recognized Miller's testimony that he built a fence and a deck in the disputed area in 2004.  Yet, in its findings of fact, the court noted that the fence was only "allegedly" built in 2004, and the court recognized that there was a "material dispute" as to whether the fence existed in 2004.  Then, when addressing the claim for adverse possession, the court prefaced its analysis by stating that even if Miller had built the fence in 2004, "no one acted hostile" toward Marrero's use until June 2013.  Based upon the court's statements in its opinion, it does not appear that the trial court found the fence's installation date to be dispositive as to the adverse-possession claim.  We disagree.

The trial court found that, even if the fence had been built in 2004, "no one acted hostile to [Marrero's] use of the Disputed Area until June 2013."  The court found that Phelps (2000-2005), Zwirko (2005-2011), and the Federal National Mortgage Association (2011-2013), did not reside at the property.  It concluded that, starting in June 2013, however, Kalaj objected to Marrero's belongings in the disputed area.  The court also found that the statutory period for adverse possession ran from June 2013 until May 2020.  Thus, the court appears to have concluded that the element of hostility was established by Kalaj's June 2013 objection and that Kalaj's objection started the clock on Marrero's adverse-possession claim.

In finding hostility beginning in June 2013, the court erroneously focused on the true owner's hostility toward Marrero.  An adverse possession claim, however, considers whether the person possessing or using the property is hostile to the true owner.  *Wengel*, 270 Mich App at 92-93.  Indeed, "[t]he term 'hostile' as employed in the law of adverse possession is a term of art and does not imply ill will; rather, hostile use is that which is inconsistent with the right of the owner, without permission asked or given, and which would entitle the owner to a cause of action against the intruder."  *Wengel*, 270 Mich App at 92-93 (quotation marks and citation omitted).

---

[4] Marrero also testified that she had added trails to the disputed area, but she did not clearly state when she did so.  She also hired someone to cut the grass in the disputed area starting in 2003, but there are no findings by the trial court that her use at that time was exclusive.

[5] On appeal, Gappy contends that Miller was "disabled due to strokes."  There is nothing in the record to support that Miller had a stroke, let alone "strokes."  However, Miller testified that he had a disability that affected his ability to read and write, but did not affect him physically.  The trial court took judicial notice that "Miller may be cognitively impaired."

Accordingly, the trial court's finding that the adverse-possession claim accrued in June 2013 is based upon an erroneous application of the law.

Moreover, in light of the testimony presented and the trial court's failure to resolve the factual dispute regarding when the fence was built, we conclude that remand for additional factual findings is required. If the trial court finds the Marrero's fence was built in the spring of 2004, that finding would be sufficient to establish the hostility element of her adverse possession claim. It is undisputed that the fence encroached on Gappy's property. The erection of the fence is plainly inconsistent with the rights of the true owner of the Gappy property. There is no testimony that Marrero had asked for or obtained permission to build the fence. And given that the addition of the fence was an unauthorized intrusion upon the Gappy property, it formed the basis for a trespass action against Marrero. See *id*. If the trial court were to find that the fence was built in the spring of 2004, then the 15-year statutory period for adverse possession would run until the spring of 2019. Alternatively, if the court finds that the fence was constructed at a later date, the statutory period would run from that date until 15 years later. Until the accrual date of Marrero's claim for adverse possession is determined, it is impossible to determine whether the elements of adverse possession were satisfied for the duration of that period.[6]

We therefore vacate the court's decision on adverse possession and remand for further factual findings. We believe that the factual disputes can be resolved on the existing record, but leave it to the sound discretion of the trial court whether to take additional arguments from the parties.

## IV. ACQUIESCENCE

Marrero contends that the trial court erred by finding that she did not establish her claim for acquiescence. We disagree.

"Under Michigan law, parties may acquiesce to a new property boundary line." *Houston v Mint Group, LLC*, 335 Mich App 545, 559; 968 NW2d 9 (2021). "Acquiescence is established when a preponderance of the evidence establishes that the parties treated a particular boundary line as the property line." *Id*. (quotation marks and citation omitted). The three theories of acquiescence include: (1) acquiescence for the statutory period; (2) acquiescence following a dispute and agreement; and (3) acquiescence arising from intention to deed to a marked boundary." *Id*. (quotation marks and citation omitted). At issue in this case is the first theory—acquiescence for the statutory period. The statutory period for acquiring property by acquiescence is 15 years. MCL 600.5801(4). To prevail, the party claiming acquiescence must show "that the property owners treated a boundary line or marker as the property line for 15 years." *Id*. (quotation marks and citation omitted).

Marrero contends that the boundary line was established when she installed her fence in 2004. As noted above, the trial court did not resolve the factual dispute as to whether the fence was installed in 2004 or whether it was installed at some later date. However, the trial court held

---

[6] Given our conclusion that additional fact finding is necessary, we decline to address the various legal theories that Gappy raises in support of the court's decision.

that, even if it were to accept that the fence had been built in 2004, Kalaj's objection to Marrero's belongings being placed in the disputed area would defeat the claim for acquiescence. That finding is not clearly erroneous.

Kalaj testified that he believed that the fence across from his garage was where the property line was located, that he was not sure if the fence actually was on the property line, and that he was not sure if there was any argument between him and Marrero involving the fence. However, he also testified that when he purchased the property Marrero had "stuff" on his side of the property line and that she placed trash cans on his side, planted evergreens, and constructed a "deck expansion." He told her to remove her belongings. He called the police when she would not remove them, but the police did not take any action. Kalaj explained that he knew that Marrero was encroaching on his property because he measured the property using two points on the south side of the property. He expressly testified that he did not accept the boundary line. He explained that he did not bring a lawsuit against Marrero because it would be time consuming and expensive.

In light of Kalaj's testimony that he challenged the boundary line after measuring the property to determine that there was an encroachment, objected to Marrero's belongings on his side of the property, and called the police in an attempt to enforce his rights, the court's finding that Kalaj did not acquiesce to the boundary line is not clearly erroneous.

On appeal, Marrero suggests that none of the owners of Gappy's property took legal action against her during the 15-year period between 2004 and 2019. That is true. However, acquiescence requires both parties to treat a boundary line as the property line. *Id.* Kalaj's testimony is sufficient to establish that he did not treat the boundary line as the property line.

On this record, the trial court did not clearly err by finding that Marrero failed to established title to the disputed area by acquiescence.

## V. CLAIMS AGAINST CHESHURE

Marrero contends that the court failed to rule on her statutory conversion claim under MCL 600.2919a. The trial court concluded that the claims against Cheshure were rendered moot by its decision to quiet title in favor of Gappy. "An issue is moot if an event occurs that renders it impossible for a court to grant relief." *Barrow v Detroit Election Comm*, 305 Mich App 649, 659; 854 NW2d 489 (2014) (quotation marks and citation omitted). On appeal, Marrero does not argue that the court's finding that the claim was moot is erroneous. We conclude this issue is abandoned in light of Marrero's failure to challenge the legal basis for the court's ruling. See *Mitcham*, 355 Mich at 203.

However, should the court on remand determine that Marrero established the elements of adverse possession and therefore acquired title to the disputed area, the trial court should reconsider Marrero's conversion claim against Cheshure. That reconsideration should include evaluation of Marrero's request for a default judgment against Cheshure and her argument that Cheshure and Gappy should be held jointly and severally liable for any damages.

## VI. MOTION FOR DAMAGES

### A. STANDARD OF REVIEW

In her cross appeal, Gappy argues that the trial court erred by declining to award her damages for her trespass claim. We review for clear error "a trial court's determination of damages following a bench trial." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 513; 667 NW2d 379 (2003).

### B. ANALYSIS

Following a bench trial, the court found that Gappy had established her trespass claim against Marrero, but that she had "failed to provide evidentiary support as to her damage claim." Accordingly, the court entered a judgment in the amount of $0 on the trespass claim. Gappy brought a post-trial motion for damages. She maintained that she proved damages in the form of lost rental income, the destruction of a 200-year-old walnut tree, and the demolition of vegetation and bushes. She contended that the destruction of her property and the trespass resulted in mental anguish, which resulted in additional damages. She maintained that she did not have "ample opportunity to present certain evidence at the time of trial due to time constraints and the agony and anguish of listening to [Marrero] testify about false prophecies."

On appeal, she directs this Court to testimony and exhibits that she contends support her claim for damages. However, a party asserting a claim "has the burden of proving damages with reasonable certainty, and damages predicated on speculation and conjecture are not recoverable." *Health Call of Detroit v Atrium Home & Health Care Srvs, Inc*, 268 Mich App 83, 96; 706 NW2d 843 (2005). In denying the motion for damages, the court reasoned that Gappy had been given an opportunity to present evidence in support of her claims during the trial. She had presented testimony from multiple witnesses, including herself, and submitted multiple exhibits in support of her arguments. No exhibits relating to damages were admitted. Given the lack of evidence related to damages, the court determined that Gappy had failed to prove her damages with reasonable certainty. Given that no evidence was admitted as to the value of Gappy's claim, we conclude that the court's finding is not clearly erroneous.[7] The court did not err by denying Gappy's motion for damages.

---

[7] We note that Gappy attached documentation in support of her claim for damages to briefs and motions filed after the trial. The documents, however, were not admitted at trial and she did not attempt to reopen the proofs to submit such evidence. We also find dubious Gappy's contention that she was not given a chance to present the claim because of time constraints and emotional distress related to Marrero's testimony regarding false prophecies. Having reviewed the trial record, we can identify no instance of the trial court imposing time restraints on her presentation of the case. Moreover, given that Gappy presented her case-in-chief first, Marrero did not, in fact, testify until after Gappy rested. Her claim of being too distressed to properly present her claim is, therefore, implausible.

## VII. MOTION FOR ATTORNEY FEES

### A. STANDARD OF REVIEW

Gappy argues that the trial court abused its discretion by denying her motion for attorney fees. A trial court's decision to award or deny attorney fees is reviewed for an abuse of discretion. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005).

### B. ANALYSIS

Gappy raises several issues related to her request for attorney fees. We address each in turn.

Gappy argues that she is entitled to recover attorney fees on behalf of Cheshure. We disagree. When she placed her appearance on the record on the first day of trial, Gappy indicated that she was "Nazek Gappy, and I'm alone." She then indicated that she had tried many times to "reach" Cheshure but had not heard anything back. She did not know if he was going to appear for trial. On the second day of trial, the following exchange occurred:

> *Marrero's lawyer*. Okay. And a point of clarification, is—I assume Ms. Gappy is representing herself and Not Mr. Cheshure. There's been no appearance filed on—she's defending herself and Cheshure is not being represented.
>
> *Gappy*. That is correct.

On the third day of trial, the court inquired whether Marrero's allegation that Cheshure burned down her fence was disputed. Gappy responded that it was disputed, noting that Cheshure "isn't even here to defend himself." She did not indicate that she was, in fact, representing him. Finally, it her closing argument, she stated that "I don't want to say too much about the claim against Mr. Cheshure, because I don't represent him."

In light of Gappy's express representations that she did not represent Cheshure, she has waived any argument that she is entitled to recover attorney fees based upon her representation of him at trial. "A waiver is a voluntary, intentional abandonment of a known rights." *K2 Retail Constr Srvs, Inc v West Lansing Retail Development, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2025) (Docket No. 367762); slip op at 14 n 12. "A party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." *Braverman v Granger*, 303 Mich App 587, 608; 844 NW2d 485 (2014). "[A] party may not take a position before this Court that is contrary to a position the party took before the lower court." *K2 Retail*, ___ Mich App at ___; slip op at 14 n 12.

Gappy next argues that she is entitled to attorney fees under MCL 600.2591 and MCR 1.109. Under MCR 1.109(E)(6), if a document is signed in violation of MCR 1.109, then the court shall impose sanctions and the sanctions "may include an order to pay to the other party . . . the amount of the reasonable expenses *incurred* because of the filing of the document, including reasonable attorney fees." (Emphasis added). Under MCL 600.2591,

(1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually *incurred* by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees. [Emphasis added.]

As a pro se party, Gappy did not incur any attorney fees. As explained in *FMB-First Mich Bank v Bailey*, 232 Mich App 711, 725-726; 591 NW2d 676 (1998), MCL 600.2591 predicates an award of attorney fees on the idea that fees are actually incurred by the litigant. However, a pro se litigant does not incur attorney fees because she represents herself. *Id.* at 726. Additionally, notwithstanding that Gappy is both a lawyer and a pro se litigant, she cannot act as an "attorney" for herself. *Id.* "[A]n attorney is an agent or substitute who acts in the stead of another, a party acting in propria persona cannot truly be said to be an attorney for himself." *Id.* As such, an attorney who acts *in propria persona* is not entitled to recover her attorney fees under MCL 600.2591 because she neither acts as an attorney for herself nor incurs attorney fees. *Id.* The same reasoning applies to an award of attorney fees under MCR 1.109(E), which, like MCL 600.2591, predicates an award of attorney fees on the idea that the fees are actually incurred. Although the trial court did not decide the case on this ground, we nevertheless affirm the trial court's order denying Gappy's request for her attorney fees on this alternate ground. *Lavey v Mills*, 248 Mich App 244, 250; 639 NW2d 261 (2001) (quotation omitted, alteration in original) ("[w]hen this Court concludes that a trial court has reached the correct result, this Court will affirm even if it does so under alternative reasoning.").

Finally, we conclude that the trial court did not abuse its discretion by denying Gappy's motion for attorney fees under MCR 2.3312 and MCR 2.313(C). Pursuant to MCR 2.312, Gappy served Marrero with requests for admission. Under MCR 2.313(C)(2) provides:

If a party denies. . . the truth of a matter as requested under MCR 2.312, and if the party requesting the admission later proves . . . the truth of the matter, the requesting party may move for an order requiring the other party to pay the expenses incurred in making that proofs, including attorney fees. The court shall enter the order unless it finds that

* * *

(c) the party failing to admit had reasonable ground to believe that he or she might prevail on the matter . . . .

In denying Gappy's motion, the trial court found that Marrero "had reasonable grounds" to believe that she might prevail on the matter. The court further noted that the prior judge had "entered an opinion granting summary disposition for [Marrero], which was later reversed by the court." Moreover, the record reflects that the court denied subsequent motions for summary disposition

because material issues of disputed fact continued to exist. Indeed, even now, there remain factual disputes that need to be resolved in order to fully evaluate the validity of Marrero's claim for adverse possession. The court's decision not to award sanctions under MCR 2.313 was not in error.

The trial court did not err by denying Gappy's motion for attorney fees.

We affirm the court's determination as to Marrero's claim for acquiescence and the court's denial of Gappy's requests for damages and attorney fees. We vacate the judgment quieting title in favor of Gappy and its determination that Marrero failed to establish title to the disputed area by adverse possession and remand for further factual and legal findings consistent with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, no taxable costs are awarded. MCR 7.219(A).

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Adrienne N. Young